**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**

SARAH BOWMAR and JOSH BOWMAR,

        Plaintiffs,

    v.

HEARST PROPERTIES, INC.,

        Defendant.

CASE NO. 3:23-cv-00382

JUDGE CAMPBELL
MAGISTRATE JUDGE FRENSLEY

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS**
**PLAINTIFFS' FIRST AMENDED COMPLAINT**

# TABLE OF CONTENTS

INTRODUCTION .................................................................................................................1

ALLEGATIONS OF THE COMPLAINT AND RELEVANT FACTS .........................................2

ARGUMENT ......................................................................................................................8

   I.  Plaintiffs Have Not Stated a Prima Facie Case of Personal Jurisdiction Over Hearst ........8

     A.  Legal Standard .................................................................................................8

     B.  Plaintiffs Have Not Alleged a Prima Facie Case and Cannot Otherwise Establish General Personal Jurisdiction Over Defendant in Tennessee .......................................9

     C.  Plaintiffs Have Not Sufficiently Alleged a Prima Facie Case and Cannot Otherwise Establish Specific Personal Jurisdiction Over Defendant in Tennessee.....................11

   II.  Plaintiffs' Complaint Should Be Dismissed Under Rule 12(b)(3) for Improper Venue........................................................................................................14

   III. Plaintiffs' Complaint Should Be Dismissed Under Rule 12(b)(6) ...................................15

     A.  Legal Standard ...............................................................................................15

     B.  Plaintiffs Have Not Plausibly Alleged a Claim for Defamation.................................16

       1.  Plaintiffs' Conclusory Allegations Do Not Plausibly Allege Defamation ...........17

       2.  Plaintiffs Cannot Meet Their Burden of Proving Falsity Since the News Report is Substantially True.................................................................18

       3.  The News Report is Privileged as Fair and Accurate Report of Plaintiffs' Criminal Proceedings...........................................................................20

     C.  Plaintiffs Have Not Plausibly Alleged a Claim for False Light Invasion of Privacy ..........................................................................................................22

       1.  Plaintiffs' Conclusory Allegations Do Not Plausibly Allege the Tort of False Light..................................................................................................23

       2.  The False Light Claim Fails Because the Report Is Substantially True and Protected by the Fair Report Privilege................................................24

CONCLUSION..................................................................................................................24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Archibald v. Metro. Gov't of Nashville & Davidson Cnty.*,
No. 11-0728, 2012 WL 3000137 (M.D. Tenn. July 23, 2012) ........................................20, 21

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)......................................................................................................16

*Bailey v. Turbine Design, Inc.*,
86 F. Supp. 2d 790 (W.D. Tenn. 2000)......................................................................12

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)................................................................................................15, 16

*Bird v. Parsons*,
289 F.3d 865 (6th Cir. 2002) .......................................................................................10

*Blessing v. Chandrasekhar*,
988 F.3d 889 (6th Cir. 2021) ...........................................................................8, 11, 12

*Burger King Corp. v. Rudzewicz*,
471 U.S. 462 (1985)........................................................................................................8

*Byrd v. State*,
150 S.W.3d 414 (Tenn. Ct. App. 2004)......................................................................18

*Cadle Co. v. Schlichtmann*,
123 F. App'x 675 (6th Cir. 2005) ..........................................................................10, 12

*Calder v. Jones*,
465 U.S. 783 (1984)................................................................................................11, 12

*Carnett v. WBBJ-TV*,
No. 14-01309, 2015 WL 10714007 (W.D. Tenn. Sept. 8, 2015) ..............................21

*Chenault v. Walker*,
36 S.W.3d 45 (Tenn. 2001)............................................................................................8

*Clark v. Viacom Int'l Inc.*,
617 F. App'x 495 (6th Cir. 2015) ...............................................................................19

*Cobb v. Time*,
278 F.3d 629 (6th Cir. 2002) ......................................................................................18

*Daimler AG v. Bauman*,
    571 U.S. 117 (2014)........................................................................................8, 10

*Davis v. Covenant Presbyterian Church*,
    No. M2013-02273-COA-R3CV, 2014 WL 2895898 (Tenn. Ct. App. June 23,
    2014) ......................................................................................................................23

*Ensing v. Sephora USA, Inc.*,
    No. 21-cv-00421, 2022 WL 4097712 (M.D. Tenn. Sept. 6, 2022)........................12

*First Cmty. Bank, N.A. v. First Tenn. Bank, N.A.*,
    489 S.W.3d 369 (Tenn. 2015)..............................................................................10

*Funk v. Scripps Media, Inc.*,
    570 S.W.3d 205 (Tenn. 2019)........................................................................20, 21

*Gallagher v. E.W. Scripps Co.*,
    No. 08-2153, 2009 WL 1505649 (W.D. Tenn. May 28, 2009) ........................16, 24

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
    564 U.S. 915 (2011)...................................................................................9, 10, 11

*Grant v. Kia Motors Corp.*,
    No. 14-cv-1584, 2014 WL 6680686 (M.D. Tenn. Nov. 25, 2014)....................14, 15

*Hall v. Metro. Gov't of Nashville & Davidson Cnty.*,
    No. 17-cv-01268, 2018 WL 305751 (M.D. Tenn. Jan. 5, 2018) ...........................23

*Hataway v. McKinley*,
    830 S.W.2d 53 (Tenn. 1992)................................................................................15

*Hensley Mfg., Inc. v. Propride, Inc.*,
    579 F.3d 603 (6th Cir. 2009) ..........................................................................15, 16

*Hill v. Old Navy, LLC*,
    20 F. Supp. 3d 643 (W.D. Tenn. 2014)............................................................20, 24

*Int'l Shoe Co. v. Washington*,
    326 U.S. 310 (1945)..........................................................................................8, 9

*Johansen v. Presley*,
    977 F. Supp. 2d 871 (W.D. Tenn. 2013).............................................................15

*Johnson v. Griffin*,
    No. 3:22-cv-000295, 2023 WL 2354910 (M.D. Tenn. Mar. 3, 2023)............9, 11, 12

*Keeton v. Hustler Magazine, Inc.*,
    465 U.S. 770 (1984)........................................................................................11, 12

*Kerry Steel, Inc. v. Paragon Indus, Inc.*,
    106 F.3d 147 (6th Cir. 1997) ........................................................................8, 9

*Kersey v. Wilson*,
    No. M2005-02106-COA-R3-CV, 2006 WL 3952899 (Tenn. Ct. App. Dec. 29,
    2006) ....................................................................................................16, 18

*Malone v. Stanley Black & Decker, Inc.*,
    965 F.3d 499 (6th Cir. 2020) ................................................................. *passim*

*Masson v. New Yorker Magazine, Inc.*,
    501 U.S. 496 (1991) ................................................................................19

*Milligan v. United States*,
    644 F. Supp. 2d 1020 (M.D. Tenn. 2009) ...............................................21

*Milligan v. United States*,
    670 F.3d 686 (6th Cir. 2012) ..............................................................20, 21

*Molthan v. Meredith Corp.*,
    No. 17-cv-00380, 2018 WL 691338 (M.D. Tenn. Feb. 2, 2018).................. *passim*

*N.Y. Times Co. v. Sullivan*,
    376 U.S. 254 (1964).................................................................................17

*Parker v. Winwood*,
    938 F.3d 833 (6th Cir. 2019) ........................................................8, 11, 13

*Phila. Newspapers, Inc. v. Hepps*,
    475 U.S. 767 (1986)................................................................................19

*Pittock v. Otis Elevator Co.*,
    8 F.3d 325 (6th Cir. 1993) .......................................................................10

*Press v. Verran*,
    569 S.W.2d 435 (Tenn. 1978).............................................................16, 17

*Pridy v. Piedmont Nat. Gas Co.*,
    458 F. Supp. 3d 806 (M.D. Tenn. 2020).................................................3, 5

*Ramsey v. Greenbush Logistics*,
    263 F. Supp. 3d 672 (M.D. Tenn. 2017)............................................9, 10, 11

*Reynolds v. Int'l Amateur Athletic Fed'n*,
    23 F.3d 1110 (6th Cir. 1994) ...................................................................12

*Setzer v. First Choice Lending Servs., LLC*,
    No. 17-CV-00147, 2018 WL 735194 (E.D. Tenn. Feb. 6, 2018)..................17

*Smith v. Reed*,
    944 S.W.2d 623 (Tenn. Ct. App. 1996) .........................................................20

*Snyder v. Phelps*,
    562 U.S. 443 (2011) .........................................................................................19

*Stones Rover Motors, Inc. v. Mid-South Publ'g Co.*,
    651 S.W.2d 713 (Tenn. Ct. App. 1983) .........................................................19

*Sullivan v. Baptist Mem'l Hosp.*,
    995 S.W.2d 569 (Tenn. 1999) ........................................................................16

*W. Express, Inc. v. Villanueva*,
    No. 17-cv-01006, 2017 WL 4785831 (M.D. Tenn. Oct. 24, 2017) ................10

*Walden v. Fiore*,
    571 U.S. 277 (2014) ............................................................................11, 12, 13

*West v. Media Gen. Convergence, Inc.*,
    53 S.W.3d 640 (Tenn. 2001) ...............................................................22, 23, 24

*Wooden v. Seigenthaler*,
    No. 86-1461986, 1986 WL 11279 (Tenn. Ct. App. Oct. 8, 1986) ..................20

**Statutes**

28 U.S.C. § 1332 ....................................................................................................6, 8

28 U.S.C. § 1441 .......................................................................................................6

28 U.S.C. § 1446 .......................................................................................................6

Tenn. Code Ann. § 20-4-104 ..............................................................................14, 15

**Other Authorities**

Fed. R. Civ. P. 10(c) .................................................................................................5

Restatement (Second) of Torts § 580 B (1977) .......................................................16

Restatement (Second) of Torts § 652E (1977) ........................................................22

Defendant Hearst Properties Inc. ("Hearst", the owner of broadcast station KCCI-TV) by and through the undersigned counsel, respectfully submits this Memorandum of Law in support of Defendant's Motion to Dismiss Plaintiffs' First Amended Complaint (the "Complaint") in its entirety pursuant to Rules 12(b)(2), (3) and (6) of the Federal Rules of Civil Procedure.

## INTRODUCTION

This action arises from fair and accurate reporting of a matter of public interest by Iowa-based broadcast station KCCI-TV, namely, charges against and guilty pleas entered by each of Plaintiffs Sarah Bowmar and Josh Bowmar in Nebraska federal court in October 2022 for conspiring to violate the federal Lacey Act, 16 U.S.C. §§ 3371-3378. That statute makes it unlawful to obtain and transport wildlife in interstate commerce that was obtained in violation of state or federal wildlife protection laws. The bare bones Complaint purports to allege causes of action for libel *per se* and false light against Hearst arising from the television broadcast and publication on KCCI-TV's website of the news story, "Ankeny Couple Pleads Guilty in Federal Poaching Case." The news story accurately reported that Plaintiffs (who have since been convicted and sentenced to three years' probation), famous for their viral bow-hunting videos, were pleading guilty to a misdemeanor conspiracy charge in a federal case wherein they were charged with participating in and documenting a series of hunts in which another entity used illegal bait traps.

Plaintiffs initiated suit in state court in Williamson County, Tennessee, alleging that they work in that county and generically that Hearst (based in New York), as the entity that owns KCCI-TV, does business in Tennessee "over the internet" and directed the content to Tennessee. As demonstrated in the declaration accompanying this motion, Hearst is a Delaware corporation, is not authorized to do business in and has no employees or physical presence in Tennessee. The

news story at issue was reported and broadcast from Iowa by an Iowa television station. Given the paucity of the allegations in the Complaint connecting the issues or parties to Tennessee and that Hearst is an out of state defendant with no presence in Tennessee, Plaintiffs cannot establish personal jurisdiction over Hearst in Tennessee. For similar reasons, venue is improper in Williamson County as none of the events alleged or reported took place in Tennessee.

On the merits, the Complaint, at best, does nothing more than recite the elements of their claims, which is facially insufficient to withstand dismissal under *Iqbal-Twombly*. Moreover, Plaintiffs cannot meet their burden of proving falsity, since the reports are substantially true and the news reports further are privileged as fair reports of official proceedings, a separate and independent basis on which both the defamation and false light claims fail.

The Complaint, therefore, should be dismissed for the following independent and dispositive reasons: first, Plaintiffs cannot establish personal jurisdiction over Hearst in Tennessee (*see infra* Point I); second, Plaintiffs' choice of venue is improper (*see infra* Point II); third, Plaintiffs do not and cannot state a claim for defamation under applicable law (*see infra* Point III.B); and fourth, Plaintiffs cannot state a claim for false light invasion of privacy (*see infra* Point III.C). Defendant respectfully moves to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(2), (3) and (6).

## ALLEGATIONS OF THE COMPLAINT AND RELEVANT FACTS

***Plaintiffs' Criminal History.*** On July 23, 2020, federal prosecutors charged Plaintiff Josh Bowmar, Plaintiff Sarah Bowmar, and the entity Bowmar Bowhunting, LLC ("BBH"), in the United States District Court for the District of Nebraska for violating the Lacey Act, 16 U.S.C. §§ 3372(a)(2)(A) and 3373(d)(2), and conspiring to violate the Act under 18 U.S.C.

§ 371, over the period September 10, 2015, through November 6, 2017. Ex. 1 ¶ 17.[1]. According to the Information, the Lacey Act

> makes it unlawful for a person to, among other things, knowingly transport, sell, receive, acquire or purchase wildlife, in interstate commerce, which has been taken, possessed, transported, or sold in violation of a wildlife-related state or federal law, and which the person knows, or in the exercise of due care should know, was taken, possessed, transported, or sold in violation of a state or federal law or regulation related to wildlife protection.

*Id.* ¶ 5. More than two years later, on October 19, 2022, plea agreements were filed in the District of Nebraska. The Bowmars and their business, BBH (a hunting and outdoor video production company), "agree[d] to plead guilty to Count I of the Information" and agreed to forfeit $44,000, comprising "the proceeds from the conspiracy to possess, transport, or sell fish or wildlife alleged in Count I of the Information." Exs. 3, 4, 5 at 1. That court entered judgment and sentenced Plaintiffs each to three years' probation and imposed respective fines in January 2023. Exs. 5, 6 at 2-7.

---

[1] On a motion to dismiss, the Court may take judicial notice of and "consider materials in addition to the complaint if such materials are public records or appropriate for the taking of judicial notice" without converting the motion to a motion for summary judgment. *Pridy v. Piedmont Nat. Gas Co.*, 458 F. Supp. 3d 806, 814 (M.D. Tenn. 2020) (citation omitted); *see also Molthan v. Meredith Corp.*, No. 17-cv-00380, 2018 WL 691338, at *12 (M.D. Tenn. Feb. 2, 2018), *report and recommendation adopted*, 2018 WL 2387235 (M.D. Tenn. May 25, 2018). Accordingly, attached hereto are Ex. 1: Information (Dkt. 1), *United States v. Bowmar*, No. 8:20-CR-178 (D. Neb. July 23, 2020); Ex. 2: Plea Agreement (Dkt. 103), *United States v. Joshua Bowmar*, No. 8:20-CR-178 (D. Neb. Oct. 19, 2022); Ex. 3: Plea Agreement (Dkt. 105), *United States v. Sarah Bowmar*, No. 8:20-CR-178 (D. Neb. Oct. 19, 2022); Ex. 4: Plea Agreement (Dkt. 107), *United States v. Bowmar Bowhunting, LLC*, No. 8:20-CR-178 (D. Neb. Oct. 19, 2022); Ex. 5: Judgment in a Criminal Case (Dkt. 132), *United States v. Joshua Bowmar*, No. 8:20-CR-178 (D. Neb. Jan. 17, 2023); Ex. 6: Judgment in a Criminal Case (Dkt. 134), *United States v. Sarah Bowmar*, No. 8:20-CR-178 (D. Neb. Jan. 17, 2023); Ex. 7: Press Release, U.S. Attorneys' Office, District of Nebraska, "Bowmar Bowhunting and Owners Josh and Sarah Bowmar Sentenced for Conspiracy to Violate the Lacey Act" dated January 17, 2023, available at https://www.justice.gov/usao-ne/pr/bowmar-bowhunting-llc-and-owners-josh-and-sarah-bowmar-sentenced-conspiracy-violate, last visited June 7, 2023; Ex. 8: Declaration of Brian Sather in Support of Defendant's Motion to Dismiss Plaintiffs' First Amended Complaint, dated June 9, 2023; Ex. 9: Petition (Dkt. 1), *Bowmar Archery LLC, et al. v. Making Hunting Great Again LLC*, No. 05771 LACL154072 (Iowa. Dist. Ct. Polk Cnty. Oct. 10, 2022).

Count I of the Information—to which they pleaded guilty—charged that the Bowmars had an ongoing business relationship with Hidden Hills Outfitters (HHO) and "willfully and knowingly conspired, combined, confederated and agreed together and with each other, and with others known to the Grand Jury, to commit an offense against the United States: A) To knowingly transport, and attempt to transport, receive, and acquire wildlife, that is, turkey and deer, or parts thereof, in interstate commerce, when in the exercise of due care, the defendant should have known that said wildlife was taken, possessed, and transported in violation of and in a manner under the regulations of Nebraska, . . . all in violation of [the Lacey Act] . . . ." Ex. 1 ¶ 17. The Information set forth numerous overt acts by Plaintiffs in violation of Nebraska and federal gaming laws in furtherance of the conspiracy, including "purchas[ing] hunting and guiding services from HHO for the purposes of taking, possessing, and acquiring wildlife in violation of the laws and regulations of the State of Nebraska," (*id.* ¶ 18), "routinely and intentionally hunt[ing] white-tailed deer within HHO baited areas," (*id.* ¶ 21), and knowingly and unlawfully archery hunting deer in baited area, establishing, using or maintaining baited areas, killing wild turkey and deer in baited areas without a permit, transporting illegally taken wildlife in interstate commerce and publishing video and other content of the unlawful hunts (concealing evidence of the unlawful bait sites) on the BBH YouTube channel and Instagram account, (*id.* ¶¶ 27A-Y). *See also id.* ¶¶ 18–26 (describing additional acts comprising the conspiracy).

In the October 2022 guilty pleas, Plaintiffs acknowledged they committed each of the elements of the conspiracy and expressly admitted that they:

- initiated an ongoing relationship with HHO and conducted three to five hunts a year at HHO;

- "agreed together and with each other to knowingly attempt to transport wildlife, or parts thereof, in interstate commerce, when in the exercise of due care, [they] should have known that said wildlife was attempted to be taken, possessed, and

4

transported in violation of and in a manner unlawful under the regulations of Nebraska;"

- "agreed to purchase hunting and guiding services from HHO for the purposes of taking, possessing, and acquiring wildlife, some of which was attempted to be taken in violation of the laws and regulations of the State of Nebraska" and that said "[w]ildlife taken, possessed, and acquired in the State of Nebraska was transported in interstate commerce from the State of Nebraska into Ohio," and

- "recorded, produced, and published photographs, videos, and other media content related to HHO hunts . . . upon various internet or social media platforms, [on BBH's Instagram and YouTube sites] and www.bowmarbowhunting.com the BBH internet webpage."

Exs. 2, 3, 4 at 3–4.

*News Reports of Plaintiffs' Guilty Pleas.* Following their guilty pleas, Iowa-based KCCI-TV broadcast from Iowa a short news story about the "famous" couple and published that same video content on its website along with a text article under the heading "Ankeny Couple Pleads Guilty in Federal Poaching Case." Compl. ¶¶ 5, 7; Ex. 8 ¶¶ 7–8 & Exs. A, B.[2] The web article stated:

> ANKENY, Iowa — An Ankeny couple famous for their viral bow-hunting videos is pleading guilty in a federal poaching case.
>
> Josh and Sarah Bowmar are among dozens of people charged in a case against the Nebraska-based company Hidden Hills Outfitters.
>
> The Bowmars have more than one million followers on Instagram and 288,000 subscribers on YouTube.
>
> Prosecutors say the couple documented a series of guided hunts in which Hidden Hills and its owner used illegal bait traps to attract white-tailed deer.
>
> The Bowmars have pleaded guilty to a misdemeanor conspiracy charge.

---

[2]     This Court may consider the broadcast (Ex. 8 at Ex. A) and web article (*id.*, Ex. B) referred to in the pleadings; they are not just integral to Plaintiffs' claims, but appear to form the bases thereof. Fed. R. Civ. P. 10(c); *see, e.g.*, *Mothan*, 2018 WL 691338, at *12 (taking judicial notice of television program in libel case on motion to dismiss); *Piedmont Nat. Gas*, 458 F. Supp. 3d at 814.

> But they could face a maximum of $200,000 in fines at their sentencing. Court records show that is scheduled for January.

Ex. 8 at Ex. B.[3]  The broadcast contained substantially the same content as the web article.  Ex. 8 at Ex. A.

    ***Plaintiffs File this Lawsuit.***  Plaintiffs filed a complaint and first amended complaint against Hearst in the Circuit Court for Williamson County, Tennessee on March 1 and 2, 2023 alleging libel *per se* and defamation by false light.  ECF No. 1-1 at 5, 10.  Copies of both pleadings with a summons dated March 20, 2023 were mailed to Hearst's registered agent for service of process, C.T. Corporation, in Wilmington, Delaware.  ECF No. 1-1 at 3–4.  Defendant, a Delaware corporation with a principal place of business in New York (*see* Ex. 8 ¶ 2), timely removed to this Court pursuant to 28 U.S.C. §§ 1332, 1441, and 1446.  ECF No. 1.

    Plaintiffs allege that Hearst owns the television station KCCI-TV and that Hearst is located in New York, New York.  Compl. ¶ 2.  While the Complaint avers that Hearst is an Iowa corporation (Compl. ¶ 2), it is in fact organized under the laws of the State of Delaware.  Ex. 8 ¶ 2.  Plaintiffs summarily allege that Hearst conducts business in Tennessee "by and through the internet."  Compl. ¶ 2.  According to the Complaint, Hearst "directed the program at issue and distributed it in Williamson County, Tennessee on or about November 1, 2022."  *Id.*  Plaintiffs also incorrectly plead that Hearst's registered agent is C.T. Corporation with an address in Knoxville, Tennessee.  Compl. ¶ 2; *see* Ex. 8 ¶ 3 (Hearst not authorized to do business in, has no property or employees in, and does not maintain registered agent for service of process in Tennessee).

    Plaintiffs aver that they are successful entrepreneurs, hunters and fitness professionals who do business in Tennessee.  Compl. ¶ 1.  In their guilty pleas, they admit that their business

---

[3]    The online article also contains the broadcast video.  Ex. 8 ¶ 8 & Exs. A, B.

was organized as a for-profit LLC in the state of Ohio as of October 2016. Exs. 2–4 at 3. They do not allege their state of residence in the Complaint; however, their guilty pleas state that they were residents of Ohio at the time of the conspiracy. Exs. 2–4 at 2. In a separate lawsuit filed in state court in Iowa in October, 2022, Plaintiffs allege they are residents of Iowa. Ex. 9 ¶¶ 5, 6; *see also* Ex. 7 (U.S. Department of Justice press release announcing their sentencing states that they reside in Ankeny, Iowa); Ex. 8 at Ex. B (web article reported couple were from Ankeny, Iowa).

The Plaintiffs conclusorily allege that Hearst, as the company that owns the television station known as KCCI-TV, broadcast on its program and over the internet defamatory statements about the Bowmars that were false when made and known to be false when made. Compl. ¶¶ 2, 5, 8. They identify the false statement made as "Ankeny Couple Pleads Guilty in Federal Poaching Case." Compl. ¶¶ 5, 7. Plaintiffs allege the statements were broadcast with reckless disregard as to whether they were true or not. Compl. ¶ 6. Further, the purportedly false statements were broadcast with an allegedly "inflammatory" title, "Ankeny Couple Pleads Guilty in Federal Poaching Case" in order to attract viewers. Compl. ¶ 7. Plaintiffs conclusorily allege that the purported false statements were made with "malice which is proven by the lack of a factual basis for the false statements and with a profit motive in order to sell its airtime." Compl. ¶¶ 8, 13–14. Plaintiffs conclude that the statements were defamatory and "caused them significant financial damages as a direct and proximate result." Compl. ¶ 9. Those allegations, they aver, support claims of the torts of false light and libel *per se*. Compl. ¶¶ 10–15.

They seek $100,000 in compensatory damages, $100,000 in punitive damages, destruction of the broadcasts and a published retraction. Compl. at 4.

**ARGUMENT**

**I.     Plaintiffs Have Not Stated a *Prima Facie* Case of Personal Jurisdiction Over Hearst**

    **A.  Legal Standard**

In diversity cases, federal courts apply the substantive law of the forum state and may only exercise personal jurisdiction over a defendant if a court in the forum state could do so, subject to the limits of due process.[4] *Blessing*, 988 F.3d at 901; *Malone v. Stanley Black & Decker, Inc.*, 965 F.3d 499, 502 (6th Cir. 2020).  The Tennessee long-arm statute permits a federal court to exercise personal jurisdiction over a defendant if that jurisdiction is within the boundaries of constitutional due process.  *Chenault v. Walker*, 36 S.W.3d 45, 52 (Tenn. 2001). Thus, this Court need only determine whether exercising personal jurisdiction would comport with constitutional due process.  *Parker v. Winwood*, 938 F.3d 833, 839 (6th Cir. 2019).

Plaintiffs need to present a prima facie case of personal jurisdiction by establishing sufficient minimum contacts by Hearst in the forum that would not offend "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (citations omitted).  Within those notions, personal jurisdiction may be general or specific. *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014); *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985).  General, all-purpose, jurisdiction is present in the forum when an out-of-state defendant's "affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum state" in order to "justify the state's exercise of judicial power

---

[4]     As a threshold matter, Defendant's removal of this action to federal court on diversity of citizenship grounds under 28 U.S.C. § 1332 does not preclude it from seeking to dismiss the action for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2).  *See Kerry Steel, Inc. v. Paragon Indus, Inc.*, 106 F.3d 147, 148 (6th Cir. 1997) (affirming dismissal for lack of personal jurisdiction in action removed based on diversity of citizenship); *Blessing v. Chandrasekhar*, 988 F.3d 889, 899 (6th Cir. 2021) (defendant need not file special appearance to preserve personal jurisdiction defense; to comply with Rule 12, defendant need only include defense in first responsive pleading).

8

with respect to any and all claims . . . ." *Goodyear Dunlop Tires Operations, S.A. v. Brown,* 564 U.S. 915, 919 (2011) (quoting *Int'l Shoe*, 326 U.S. at 317); *Kerry Steel*, 106 F.3d at 149. A court may assert specific jurisdiction when there is sufficient affiliation between the forum and the underlying controversy, *i.e.*, an activity or occurrence that takes place in the forum state such that the court would be adjudicating the very controversy that establishes jurisdiction. *Goodyear*, 564 U.S. at 919.

On a motion to dismiss, if plaintiff makes a prima facie case for the exercise of personal jurisdiction in his complaint, the burden shifts to the defendant, whose motion must be supported with evidence. *Malone*, 965 F.3d at 504; *Johnson v. Griffin*, No. 3:22-cv-000295, 2023 WL 2354910, at *2 (M.D. Tenn. Mar. 3, 2023), *appeal docketed*, No. 23-5257 (6th Cir. Mar. 29, 2023). Plaintiff may not then rest on his pleadings and must, by affidavit or otherwise, set forth specific facts showing that the court has personal jurisdiction. *Id.* Here, Plaintiffs have neither made a prima facie showing of general or specific jurisdiction in their Complaint nor will they be able to overcome the evidence submitted by Hearst to avoid dismissal. *See* Points I.B and I.C.

### B. Plaintiffs Have Not Alleged a Prima Facie Case and Cannot Otherwise Establish General Personal Jurisdiction Over Defendant in Tennessee

Hearst is not subject to general jurisdiction in Tennessee, as it is not "at home" in the state. Plaintiffs allege that defendant Hearst is located in New York, New York. Compl. ¶ 2. They do not allege that it is incorporated in or maintains its principal place of business in Tennessee, such that it is "at home" in Tennessee. *Ramsey v. Greenbush Logistics*, 263 F. Supp. 3d 672, 676-77 (M.D. Tenn. 2017). A corporation's principal place of business and place of incorporation, here Delaware and New York (Ex. 8 ¶ 2), are the paradigm bases for general jurisdiction and, while they are not the only bases, general jurisdiction requires a showing that the defendant's relationship with Tennessee is more substantial that its relationship

with other numerous forums; doing business in the state is not enough. *First Cmty. Bank, N.A. v. First Tenn. Bank, N.A.*, 489 S.W.3d 369, 383 (Tenn. 2015); *Daimler*, 571 U.S. at 138-39; *Goodyear*, 564 U.S. at 924; *Ramsey*, 263 F. Supp. 3d at 676-77.

Plaintiffs conclusorily allege that Hearst "conducts business in Williamson County, Tennessee, by and through the internet." Merely alleging internet presence, without identifying where the underlying internet conduct took place, is not sufficient to justify general jurisdiction. *Cadle Co. v. Schlichtmann*, 123 F. App'x 675, 677 (6th Cir. 2005) (citing *Bird v. Parsons*, 289 F.3d 865, 874 (6th Cir. 2002)) (affirming dismissal); *see also First Cmty. Bank*, 489 S.W.3d at 383 (sufficient contacts must be plead with particularity). Likewise, the operation of a website that is accessible to anyone over the internet does not confer general personal jurisdiction; that activity does not "approximate physical presence within the state's borders." *Cadle*, 123 F.. App'x at 677 (quoting *Bird*, 289 F.3d at 874). Here, not only do Plaintiffs fail to allege actual facts showing any internet conduct in Tennessee, their Complaint acknowledges that Defendant's business consists of owning an Iowa-based broadcast television station, KCCI-TV, suggesting any internet conduct necessarily originated in Iowa (Compl. ¶¶ 2, 5) and negating any notion of continuous and systemic contacts in Tennessee. Thus, Plaintiffs' conclusory allegations of internet business do not make out a prima facie case of general jurisdiction in Tennessee.

Plaintiffs also plead that Hearst's registered agent is C.T. Corporation with an address in Tennessee. Compl. ¶ 2. Even if this were true, which it is not, the mere designation of an agent for service of process in the forum state does not constitute consent to or otherwise subject an out-of-state business to personal jurisdiction in that state. *Pittock v. Otis Elevator Co.*, 8 F.3d 325, 329 (6th Cir. 1993); *W. Express, Inc. v. Villanueva*, No. 17-cv-01006, 2017 WL 4785831, *5 (M.D. Tenn. Oct. 24, 2017).

The declarations supporting this motion foreclose any possibility of general personal jurisdiction in Tennessee. Hearst is a Delaware corporation with its principal place of business in New York. Ex. 8 ¶ 2; *Goodyear*, 564 U.S. at 924; *Ramsey*, 263 F. Supp. 3d at 676-77. It is not qualified to do business in Tennessee and does not maintain any physical presence or employees in Tennessee. Ex. 8 ¶ 3. Broadcasts from its FCC-licensed station, KCCI-TV, are reported in Iowa and directed over airwaves and via cable outlets to cable subscribers in Iowa. *Id.* ¶ 5. The content on KCCI's website is published from Iowa. *Id.* ¶ 6. These facts establish that general jurisdiction is improper over Hearst in Tennessee.

### C. Plaintiffs Have Not Sufficiently Alleged a Prima Facie Case and Cannot Otherwise Establish Specific Personal Jurisdiction Over Defendant in Tennessee

The Court cannot maintain specific personal jurisdiction over Hearst in Tennessee in this case. To maintain specific personal jurisdiction, the plaintiff must assert, with reasonable particularity, sufficient contacts relating to the suit between the defendant and the forum state. *Malone*, 965 F.3d at 504. "Th[is] 'minimum contacts' analysis depends on the defendant's contact with the forum, 'not the defendant's contacts with persons who reside there.'" *Blessing*, 988 F.3d at 904 (quoting *Walden v. Fiore*, 571 U.S. 277, 285 (2014)); *Johnson*, 2023 WL 2354910, at *3. In other words, the defendant's "suit-related conduct" must establish "'a substantial connection' with Tennessee" in order for the defendant to have purposefully availed itself of the privilege of acting in the forum state. *Parker*, 938 F.3d at 839 (quoting *Walden*, 571 U.S. at 284); *Johnson*, 2023 WL 2354910, at *3.

In tort actions arising from publications, the U.S. Supreme Court established benchmarks to analyze whether due process will permit a court to exercise specific jurisdiction over a non-resident publisher in a pair of decisions in 1984. *See Calder v. Jones*, 465 U.S. 783 (1984); *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770 (1984). Under the so-called "effects" test,

purposeful availment may only be found where a libel defendant publishes material "expressly aimed" at the forum state, with knowledge that the brunt of the harm would occur there. *Calder*, 465 U.S. at 789-90. Following the reasoning in *Calder* and *Keeton*, the Supreme Court held in *Walden* that a Georgia defendant who seized money and drafted an allegedly false affidavit about Nevada plaintiffs was not subject to personal jurisdiction in Nevada where the defendant had "formed no jurisdictionally relevant contacts with Nevada"; acting from Georgia to allegedly direct his conduct at plaintiffs who the defendant knew had Nevada connections did not connect the defendant to Nevada in a meaningful way. 571 U.S. at 289-90.

Consistent with the aforementioned decisions, the Sixth Circuit Court of Appeals has affirmed the dismissal of defamation suits for want of personal jurisdiction where the publication originated out-of-state. *See, e.g.*, *Blessing*, 988 F.3d at 904-06; *Cadle*, 123 F. App'x at 679; *Reynolds v. Int'l Amateur Athletic Fed'n*, 23 F.3d 1110, 1116-20 (6th Cir. 1994); *see also Johnson*, 2023 WL 2354910, at *2-3; *Ensing v. Sephora USA, Inc.*, No. 21-cv-00421, 2022 WL 4097712, at *3 (M.D. Tenn. Sept. 6, 2022); *Bailey v. Turbine Design, Inc.*, 86 F. Supp. 2d 790, 794-97 (W.D. Tenn. 2000).

Plaintiffs' conclusory allegation that Hearst "directed the program at issue and distributed it in Williamson County, Tennessee on or about November 1, 2022" together with the allegation that they themselves conduct business in Tennessee do not come close to making the necessary particularized *prima facie* showing of purposeful availment to confer jurisdiction. Compl. ¶¶ 1, 2; *see, e.g.*, *Malone*, 965 F.3d at 504. The Complaint is devoid of any allegation that Hearst engaged in any activity in Tennessee, that any facts about which Hearst reported occurred in Tennessee, that Hearst could conceivably have been aware of Plaintiffs' averred business conduct in Tennessee or of any specific effect of the broadcast in Tennessee. Instead, the

broadcast and web article refer to Plaintiffs as residing in Ankeny, Iowa. Ex. 8 at Exs. A, B; *see also* Exs. 7, 9 ¶ 5, 6. The guilty pleas and charges about which KCCI reported state that Plaintiffs were, at the time of the admitted conspiracy, residents of Ohio. Exs. 2, 3 at 2; Ex. 1 ¶ 1. And the activities comprising the charges and acts in furtherance of the admitted federal conspiracy took place in Nebraska and in interstate commerce to Ohio, the charges and guilty pleas were brought by the U.S. Attorney's Office for the District of Nebraska and entered in the District of Nebraska, and the underlying state laws that Plaintiffs conspired to violate were the laws of the State of Nebraska. Exs. 2, 3 at 2; Ex. 1 ¶ 17.

Assuming *arguendo* that Plaintiffs' allegations approached the necessary *prima facie* showing, the declarations submitted herewith make plain that Hearst's activities in creating and publishing the subject content, *i.e.*, their "suit-related conduct" did not create any connection with Tennessee, much less the necessary substantial one. *Parker*, 938 F.3d at 839 (quoting *Walden*, 571 U.S. at 284). KCCI-TV broadcasted and posted the subject video and posted the analogous web article from its location in Des Moines, Iowa. Ex. 8. ¶ 9. No KCCI employee visited Tennessee, communicated with anyone in Tennessee or visited Tennessee in the course of creating or publishing the story. *Id.* ¶ 11. And, KCCI did not broadcast the story over airwaves in Tennessee or to outlets in Tennessee. *Id.* ¶ 10. As such, Hearst's suit-related connections to Tennessee are even fewer than those of defendants in the cited decisions, *supra*, where plaintiffs failed to make a particularized *prima facie* case of specific personal jurisdiction. Considering the facts in the light most favorable to Plaintiffs, as this court must under the applicable burden shifting paradigm, *see Malone*, 965 F.3d at 504, specific jurisdiction over Hearst in Tennessee is not possible.

For all of the aforementioned reasons, Plaintiffs cannot satisfy their burden to state a prima facie case of personal jurisdiction, either specific or general, over Hearst in Tennessee and thus, this action should be dismissed pursuant to Rule 12(b)(2), with prejudice.

## II. Plaintiffs' Complaint Should Be Dismissed Under Rule 12(b)(3) for Improper Venue

For analogous reasons, this Court should also dismiss this action pursuant to Federal Rule of Civil Procedure 12(b)(3) because Plaintiffs' choice of venue is improper. The relevant question is whether, under Tennessee law, venue was proper in Williamson County, Tennessee where the case was originally filed.[5] *Grant*, 2014 WL 6680686, at *3. Under Tennessee's applicable venue provisions, an out-of-state defendant corporation is subject to suit in the following venues: "(1) The county where all or a substantial part of the events or omissions giving rise to the cause of action accrued;" or "(3)(A) If the defendant is not organized under the laws of this state, the county where the defendant's registered agent for service of process is located; (B) If the defendant does not maintain a registered agent within this state, the county where the person designated by statute as the defendant's agent for service of process is located." Tenn. Code Ann. § 20-4-104; *see also Grant*, 2014 WL 6680686, at *3-4.

As previously described, Plaintiffs cannot establish and have not sufficiently pled that any actions or omissions giving rise to their claims occurred in Tennessee. *See supra* Point I.C. They do, however, allege (incorrectly) that Hearst's registered agent is C.T. Corporation in Knoxville, TN, *see* Compl. ¶ 2. But Knoxville is not in Williamson County where this case was originally filed, and, in any event, Hearst does not have a registered agent in Knoxville or any statutorily designated agent in the state. Ex. 8 ¶ 3. Venue is, therefore, improper in this Court

---

[5]     Removing a case to federal court does not preclude a defendant from arguing that the plaintiff's suit was filed in an improper venue. *Grant v. Kia Motors Corp.*, No. 14-cv-1584, 2014 WL 6680686, at *2-3 (M.D. Tenn. Nov. 25, 2014).

under Tenn. Code Ann. §§ 20-4-104(1) and (3)(A).[6]  Accordingly, Plaintiffs' Complaint should

be dismissed under Rule 12(b)(3).

## III.    Plaintiffs' Complaint Should Be Dismissed Under Rule 12(b)(6)

Should this Court determine that it has personal jurisdiction over Hearst in Tennessee and

that venue is proper, Plaintiffs' Complaint still must be dismissed for failure to state a claim for

both defamation and false light invasion of privacy under Tennessee law.[7]

### A.  Legal Standard

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must contain "a

short and plain statement of the claim showing that the pleader is entitled to relief."  Although

this standard does not require "detailed factual allegations," it does require more than "labels and

conclusions" or "a formulaic recitation of the elements of a cause of action."  *Hensley Mfg., Inc.

v. Propride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009) (quoting *Bell Atl. Corp. v. Twombly*, 550

U.S. 544, 555 (2007)).  To survive a motion to dismiss, the plaintiff must allege facts that, if

---

[6]    Because the Complaint alleges that Hearst has an agent for service of process in
Tennessee, Hearst assumes that Plaintiffs would not argue that venue is proper under Tenn. Code
Ann. § 20-4-104(3)(B).  It bears noting, however, that venue is also improper under that
provision based on the analysis applied in *Grant* as Hearst is not qualified to do business in
Tennessee.  2014 WL 6680686, at *4; Ex. 8 ¶ 3.

[7]    A federal court sitting in diversity applies the substantive law of the forum state,
including its choice of law analysis.  *Johansen v. Presley*, 977 F. Supp. 2d 871, 881 (W.D. Tenn.
2013).  Under Tennessee law, the substantive law to be applied is that which has the "most
significant relationship" to the personal injury tort.  *Id.*  That approach mandates that courts
apply "the local law of the state where the injury occurred … unless, with respect to the
particular issue, some other state has a more significant relationship."  *Id.* (quoting *Hataway v.
McKinley*, 830 S.W.2d 53, 59 (Tenn. 1992)).  Given the paucity of allegations in the Complaint
concerning the location of Plaintiffs' purported injury or other factual allegations upon which to
conduct any meaningful choice of law analysis, assuming that Plaintiffs had some reason to sue
in Tennessee, and that the Court would only be examining the sufficiency of Plaintiffs'
substantive allegations after concluding that personal jurisdiction is proper in Tennessee,
Defendant applies Tennessee substantive law for purposes of this motion but expressly does not
waive its right to challenge that application if this case proceeds and facts are revealed to support
the application of a different state's law and if there are meaningful differences between such
laws.

accepted as true, are sufficient "to raise a right to relief above the speculative level," and to "state a claim to relief that is plausible on its face." *Id.* (quoting *Twombly*, 550 U.S. at 570; *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Iqbal*, 556 U.S. at 678). And although the Court must accept all well-pleaded factual allegations in the Complaint as true, it need not "accept as true a legal conclusion couched as a factual allegation." *Id.* (quoting *Twombly*, 550 U.S. at 555). Plaintiffs do not and cannot meet the applicable pleading standard for their defamation claim, *see* Point III.B or their false light claim, *see* Point III.C.

### B. Plaintiffs Have Not Plausibly Alleged a Claim for Defamation

Plaintiffs do not plead a plausible claim for defamation.

Plaintiffs fashion their defamation claim as libel *per se*. Compl. at 3. Tennessee no longer recognizes a claim of libel *per se* and thus dismissal of Count 2 is proper for that reason alone. *See Gallagher v. E.W. Scripps Co.*, No. 08-2153, 2009 WL 1505649, at *6 (W.D. Tenn. May 28, 2009) (dismissing claim for libel *per se*). But even if the claim were properly fashioned, it would fail for the reasons discussed below.

Under Tennessee law, to plausibly state a claim for defamation, a plaintiff must allege, that (1) a party published a statement; (2) with knowledge that the statement is false and defaming to the other; or (3) with reckless disregard for the truth of the statement or with negligence in failing to ascertain the truth of the statement. *Sullivan v. Baptist Mem'l Hosp.*, 995 S.W.2d 569, 571 (Tenn. 1999) (citing Restatement (Second) of Torts § 580 B (1977); *Press v. Verran*, 569 S.W.2d 435, 442 (Tenn. 1978)). Further, to survive dismissal, a plaintiff must plead actual injury to reputation resulting from the defamatory publication. *See Kersey v. Wilson*, No.

M2005-02106-COA-R3-CV, 2006 WL 3952899, at *6 (Tenn. Ct. App. Dec. 29, 2006), *appeal denied* (Tenn. 2007), *cert. denied*, 552 U.S. 889 (2007).

### 1. Plaintiffs' Conclusory Allegations Do Not Plausibly Allege Defamation

Plaintiffs' bare Complaint should be dismissed as facially deficient.

Plaintiffs' Complaint here does not contain any factual content sufficient to support any element of a libel claim and should be dismissed on that basis alone. *See, e.g.*, *Molthan*, 2018 WL 691338, at *12 (dismissing libel claim where allegations as to elements were conclusory).

The Complaint does not contain factual content identifying what is false about the statement or the entirety of the reporting, "Ankeny Couple Pleads Guilty in Federal Poaching Case." Compl. ¶¶ 5, 7. Rather, Plaintiffs simply conclude that it is defamatory. *Id.* ¶¶ 5, 7, 9. Plaintiffs fail to plead facts to articulate what is false about the reporting and therefore do not sufficiently allege falsity under the applicable *Iqbal-Twombly* pleading standard. *See, e.g.*, *Mothan*, 2018 WL 691338, at *1, 12 (dismissing libel claim where plaintiffs' allegations that his criminal record was falsely reported were conclusory); *Setzer v. First Choice Lending Servs., LLC*, No. 17-CV-00147, 2018 WL 735194, at *10-11 (E.D. Tenn. Feb. 6, 2018) (dismissing defamation claim where plaintiff generally alleged unspecified statements were false), *aff'd*, No. 18-5192, 2018 WL 7500477 (6th Cir. Sept. 10, 2018).

Plaintiffs also must demonstrate fault. Plaintiffs who are deemed public figures must establish that the libelous statements were made with "actual malice—that is, with knowledge that it was false or with reckless disregard of whether it was false or not." *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 279-80 (1964); *Press*, 569 S.W.2d at 441 (defining categories of public figures under Tennessee law). Plaintiffs' allegations regarding their own activities and fame demonstrate that they are properly considered public figures, (Compl. ¶ 1; *see also, e.g.*, Ex. 1

¶¶ 2, 19, 22, 24, 27; Ex. 8 at Ex. B), and the Complaint recognizes as much by reciting that standard. Compl. ¶¶ 6 (statements were broadcast with reckless disregard), 8 (statements were made with malice). However, the mere recitation that statements were made with actual malice does not suffice under federal pleading standards. *See Molthan*, 2018 WL 691338, at *12 (dismissing defamation claims where allegations were conclusory and for additional reason that underlying judicial records confirmed impossibility of actual malice). Plaintiffs' conclusory references to Hearst's motivations for profit and attracting viewers, (Compl. ¶¶ 7, 8), also do not suffice to plead actual malice. *See, e.g.*, *Cobb v. Time*, 278 F.3d 629, 636-37 (6th Cir. 2002), *cert. denied*, 537 U.S. 878 (2002).

Plaintiffs' defamation claim also should be dismissed because they have failed adequately to allege facts showing damage to their reputations arising from the news story. *See Byrd v. State*, 150 S.W.3d 414, 421-22 (Tenn. Ct. App. 2004) (dismissing defamation claim where plaintiff failed to allege injury to reputation). Here, Plaintiffs merely state that the statements "caused them significant financial damages as a direct and proximate result." Compl. ¶ 9. That is not enough to survive dismissal. *See Kersey*, 2006 WL 3952899, at *6 (affirming dismissal where pleading contained general allegation of damages without accompanying allegation of fact that would lead court to attribute loss to the statement made rather than the behavior being commented on).

### 2. Plaintiffs Cannot Meet Their Burden of Proving Falsity Since the News Report is Substantially True

Plaintiffs' defamation claim fails as a matter of law because the report at issue is "substantially true," meaning that Plaintiffs cannot meet their burden of pleading falsity.

Because Hearst is a media defendant and the speech at issue involves matters of public concern,[8] Plaintiffs carry a common law and constitutional burden of pleading and proving falsity. *Phila. Newspapers, Inc. v. Hepps*, 475 U.S. 767, 776 (1986). "The common law of libel . . . overlooks minor inaccuracies and concentrates upon substantial truth." *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 516 (1991) (citations omitted); *Stones Rover Motors, Inc. v. Mid-South Publ'g Co.*, 651 S.W.2d 713, 719-20 (Tenn. Ct. App. 1983), *abrogated on other grounds recognized in Zius v. Shelton*, No. E1999-01157-COA-R9-CV, 2000 WL 739466, at *3 (Tenn. Ct. App. June 6, 2000). "Minor inaccuracies do not amount to falsity so long as the substance, the gist, the sting, of the libelous charge be justified. Put another way, the statement is not considered false unless it would have a different effect on the mind of the reader from that which the pleaded truth would have produced." *Masson*, 501 U.S. at 517 (citations and quotation marks omitted). To assess falsity, the web article and broadcast must be considered in their entirety, viewing the overall meaning of the statements in context. *Clark v. Viacom Int'l Inc.*, 617 F. App'x 495, 508 (6th Cir. 2015).

Despite the lack of guidance from Plaintiffs as to what they deem is defamatory or false about the reports, there can be no doubt that the broadcast and web article are substantially true, as made clear by the judicial records of the federal charges against them and their guilty pleas. Exs. 1-6. The news reports accurately stated that Plaintiffs were charged in a federal poaching case along with HHO, that prosecutors said the couple documented a series of hunts where HHO used illegal bait traps to attract game, and that the Bowmars pleaded guilty to the misdemeanor

---

[8]     "Speech deals with matters of public concern when it can be fairly considered as relating to any matter of political, social, or other concern to the community or when it is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public." *Snyder v. Phelps*, 562 U.S. 443, 453 (2011) (citations and quotation marks omitted). The determination of whether a matter is of public concern is a question of law for the court. *Id.*

conspiracy charge. *Compare* Sather Decl. Exs. A, B, *with* Ex. 1 ¶¶ 1–27; Exs 2, 3, 4 at 2–4.

There is simply nothing untrue, much less substantially so, in this reporting, and therefore no

defamation. *See Archibald v. Metro. Gov't of Nashville & Davidson Cnty.*, No. 11-0728, 2012

WL 3000137, at *3-4 (M.D. Tenn. July 23, 2012) (taking judicial notice of criminal proceedings

and news reports, dismissing defamation claim because reports were substantially true), *report*

*and recommendation adopted*, 2012 WL 3283480 (M.D. Tenn. Aug. 10, 2012); *Wooden v.*

*Seigenthaler*, No. 86-1461986, 1986 WL 11279, at *1-2 (Tenn. Ct. App. Oct. 8, 1986).

### 3. The News Report is Privileged as Fair and Accurate Report of Plaintiffs' Criminal Proceedings

Plaintiffs' defamation claim is not actionable as a matter of law for the independent

reason that the publication at issue as a fair and accurate report of official proceedings.

"The Tennessee fair report privilege is a well-established Tennessee common law

doctrine that protects media entities that report on official actions and proceedings." *Molthan*,

2018 WL 691338, at *11 (citing *Milligan v. United States*, 670 F.3d 686, 696 (6th Cir. 2012));

*Funk v. Scripps Media, Inc.*, 570 S.W.3d 205, 211-212 (Tenn. 2019). Its application is a

question of law to be determined by the court, not the jury. *Hill v. Old Navy, LLC*, 20 F. Supp.

3d 643, 648 (W.D. Tenn. 2014). Reporting based on court documents from judicial proceedings

is protected by the privilege. *Molthan*, 2018 WL 691338, at *12 (dismissing libel claim where

defendant's broadcast accurately reported contents of judicial and legislative testimony); *Smith v.*

*Reed*, 944 S.W.2d 623, 625 (Tenn. Ct. App. 1996). And, recently, the Tennessee Supreme Court

adopted the modern approach of the privilege set forth in the Restatement (Second) of Torts §

611 and held that the privilege cannot be overcome by a showing of actual malice. *Funk*, 570

S.W.2d at 211-12.

In order for the privilege to apply, the news report must be a fair and accurate portrayal of the official action, or a fair abridgement of the occurrence reported. *Funk*, 570 S.W.2d at 211-12. The report, however, does not have to be "a verbatim, technically accurate account in every detail, as long as it conveys a correct and just impression of what took place." *Milligan*, 670 F.3d at 697 (citation omitted). "Minor, insignificant factual discrepancies will not overcome the fair report privilege." *Id.* Moreover, on a motion to dismiss, the court may take judicial notice of and consider the underlying judicial documents in order to determine whether the privilege applies. *See Molthan*, 2018 WL 691338, at *12.

News reports of criminal charges and proceedings are routinely afforded protection from liability based on the fair report privilege. *See, e.g.*, *Molthan*, 2018 WL 691338, at *12; *Milligan v. United States*, 644 F. Supp. 2d 1020 (M.D. Tenn. 2009), *aff'd*, 670 F.3d 686 (6th Cir. 2012); *Archibald*, 2012 WL 3000137, at *3-4; *Carnett v. WBBJ-TV*, No. 14-01309, 2015 WL 10714007, at *4 (W.D. Tenn. Sept. 8, 2015), *report and recommendation adopted in relevant part*, 2015 WL 10714008 (W.D. Tenn. Sept. 25, 2015).

The news reports here are fair and accurate accounts and "convey a just impression" of Plaintiffs' District of Nebraska criminal charges and guilty pleas concerning their agreement to "purchase hunting and guiding services from HHO for the purposes of taking, possessing, and acquiring wildlife, some of which was attempted to be taken in violation of the laws and regulations of the State of Nebraska," (Exs. 2, 3, 4 at 3) including "white-tailed deer" (Ex. 1 ¶ 21) and "record[ing], produc[ing], and publish[ing] photographs, videos and other media content related to HHO hunts … upon various internet or social media platforms," (Ex. 2, 3, 4 at 3). *See also* Exs. 1–4. Accordingly, the broadcast and web article are privileged as fair and

accurate reports of the criminal proceedings against Plaintiffs, and Plaintiffs' defamation claims should be dismissed.

## C. Plaintiffs Have Not Plausibly Alleged a Claim for False Light Invasion of Privacy

Plaintiffs' separate, but related, false light claim suffers from the same pleading defects as their defamation claim and should be dismissed.

The elements of a false light claim under Tennessee law are as follows: (1) publicity, (2) that places plaintiff in a false light, (3) that is "highly offensive to a reasonable person", and (4) that the defendant knew of or acted with reckless disregard to the "falsity of the publicized matter and the false light in which the other would be placed." *West v. Media Gen. Convergence, Inc.*, 53 S.W.3d 640, 643-44 (Tenn. 2001) (citing Restatement (Second) of Torts § 652E (1977)).  Recognizing the potential for overlap with and end-runs around defamation's constitutional limits, [9] the Tennessee Supreme Court has imposed stringent limitations on the false light claim, including constitutional limits.  *See id.* at 645-48 (actual malice applies where matter of publicity is of public interest; separate damages must be alleged and proven).  To further ensure that there would be no overlap with the tort of defamation, if Plaintiffs seek to recover under both theories they must also specifically plead (and prove) actual damages allegedly suffered from the invasion of their privacy.  *See id.* at 648.  Finally, the *West* decision confirmed that the absolute and conditional privileges established by Sections 652F-G of the Restatement (Second) of Torts, which apply to defamation, also apply to false light invasion of

_____

[9]     *See, e.g.*, Restatement (Second) of Torts, § 652E, cmt. e ("When the false publicity is also defamatory so that either action can be maintained by the plaintiff, it is arguable that limitations of long standing that have been found desirable for the action for defamation should not be successfully evaded by proceeding upon a different theory of later origin . . . .").

privacy.  *Id.*  Plaintiffs' false light claim should be dismissed because the Complaint is facially deficient and because the reporting is substantially true and protected by the fair report privilege.

### 1. Plaintiffs' Conclusory Allegations Do Not Plausibly Allege the Tort of False Light

The absence of any facts in Plaintiffs' Complaint to permit this Court to reasonably infer that Hearst has committed the tort of false light demands dismissal of its claim.

To begin, Plaintiffs merely assert the legal conclusion that "the statements made by Defendant . . .  constitute the tort of false light and Plaintiffs have suffered damages as a direct and proximate result."  Compl. ¶ 11.  That type of conclusory allegation may not survive this motion.  *See, e.g.*, *Davis v. Covenant Presbyterian Church*, No. M2013-02273-COA-R3CV, 2014 WL 2895898, at *4-5 (Tenn. Ct. App. June 23, 2014) (affirming dismissal of false light claim where plaintiffs merely alleged that false information was conveyed and damaged and harmed plaintiffs); *Molthan*, 2018 WL 691338, at *12 (conclusory allegations did not sufficiently plead that defendants placed plaintiff in a false light that would be highly offensive to a reasonable person).  The Complaint contains no facts from which to infer what was false or misleading (or highly offensive) in the broadcast and web article to place Plaintiffs in a false light.  *See Molthan*, 2018 WL 691338, at *12.  Similarly, while recognizing that actual malice applies (Compl. ¶¶ 6, 8), Plaintiffs do not sufficiently allege any facts to support fault.  *See Hall v. Metro. Gov't of Nashville & Davidson Cnty.*, No. 17-cv-01268, 2018 WL 305751, at *2, 7 (M.D. Tenn. Jan. 5, 2018) (dismissing false light claim for failure to adequately plead facts showing actual malice).  There are also no facts from which to infer Plaintiffs' false light damages.  *See West*, 53 S.W.2d at 648.

### 2. The False Light Claim Fails Because the Report Is Substantially True and Protected by the Fair Report Privilege

"Tennessee law recognizes that false light like defamation involves the publication of false information." *Gallagher*, 2009 WL 1505649, at *7 (citing *West*, 53 S.W.2d at 645 n.5). Statements that are substantially true, therefore, are not actionable unless they somehow made discrete presentations of information in a fashion casting plaintiff in a false light. *Id.* at *7, 9-10 (dismissing false light claims where reports of court proceedings were substantially true). As demonstrated *supra* Point II.B.2, there can be no doubt that the broadcast and web article here are substantially true reports of criminal proceedings. Thus, the false light claim should be dismissed. *Id.*

Separately, and independently, the fair report privilege applies to false light claims and provides an independent basis for dismissal. *See, e.g.*, *Hill*, 20 F. Supp. 3d at 646 (fair report privilege protected defendant's news report from false light claim (and other torts)). For the reasons articulated in *supra* Point III.B.3, the news reports at issue fairly and accurately summarized Plaintiffs' District of Nebraska criminal charges and guilty pleas; therefore, Plaintiffs' false light claim should be dismissed as privileged.

### CONCLUSION

For the foregoing reasons, Hearst respectfully requests this Court dismiss Plaintiffs' Complaint with prejudice.

DATED: June 9, 2023

By    */s/ Rocklan W. King III*

Rocklan W. King III (BPR No. 30643)
Adams and Reese LLP
1600 West End Avenue, Suite 1400
Nashville, Tennessee 37203
Tel: (615) 259-1041
Fax: (615) 259-1470
Rocky.king@arlaw.com

AND

Jonathan R. Donnellan (pro hac vice forthcoming)
Kristen L. Hauser (pro hac vice forthcoming)
HEARST CORPORATION
Office of General Counsel
300 W. 57th Street, 40th Floor
New York, NY 10019
(212) 649-2020
jdonnellan@hearst.com
khauser@hearst.com

*Attorneys for Defendant Hearst Properties Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that, on June 9, 2023, a true and correct copy of the foregoing

Memorandum of Law in Support of Defendant's Motion to Dismiss was filed with the Court and

served via CM/ECF system upon the following counsel of record for Plaintiffs:

Belle Meade Office Park
G. Kline Preston, IV, Esq.
4515 Harding Pike, Suite 107
Nashville, TN 37205
Fax: (866) 610-9565
kpreston@klineprestonlaw.com


By      */s/ Rocklan W. King III*