# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE

SARAH BOWMAR and JOSH BOWMAR,

        Plaintiffs,

    v.

HEARST PROPERTIES, INC.,

        Defendant.

CASE NO. 3:23-cv-00382

JUDGE CAMPBELL
MAGISTRATE JUDGE FRENSLEY

## DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION TO AMEND

# TABLE OF CONTENTS

INTRODUCTION .................................................................................................................1

ALLEGATIONS OF THE PROPOSED SECOND COMPLAINT AND RELEVANT
FACTS ............................................................................................................................2

ARGUMENT ......................................................................................................................7

    I.  Plaintiffs Did Not Comply with the Federal Rules of Civil Procedure or the Local Civil
Rules of this Court ........................................................................................8

       A.  Plaintiffs Are Not Entitled to an Amendment as of Right ...........................................8

       B.  Plaintiffs Did Not Meet and Confer...........................................................9

       C.  Plaintiffs Did Not Support Their Motion to Amend.......................................9

   II.  Plaintiffs' Proposed Second Complaint is Futile Because It Does Not State a *Prima Facie*
Case of Personal Jurisdiction Over Hearst........................................................10

       A.  Plaintiffs Have Not Alleged a Prima Facie Case and Cannot Otherwise Establish
General Personal Jurisdiction Over Defendant in Tennessee .....................................11

       B.  Plaintiffs Have Not Sufficiently Alleged a Prima Facie Case and Cannot Otherwise
Establish Specific Personal Jurisdiction Over Defendant in Tennessee.....................13

  III.  Plaintiffs' Second Complaint Does Not Allege Proper Venue in Tennessee ..................16

  IV.  Plaintiffs' Motion to Amend Should Be Denied Because the Second Complaint is
Dismissible Under Rule 12(b)(6).......................................................................17

       A.  Plaintiffs Cannot Meet Their Burden of Proving Falsity Since the News Report is
Substantially True .............................................................................18

       B.  The News Report is Privileged as a Fair and Accurate Report of Plaintiffs' Criminal
Proceedings .....................................................................................20

       C.  Plaintiffs Have Not Plausibly Alleged a Claim for Defamation.................................22

       D.  Plaintiffs Have Not Plausibly Alleged a Claim for False Light Invasion of
Privacy .........................................................................................24

CONCLUSION.................................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amaker v. Haponik*,
    198 F.R.D. 386 (S.D.N.Y. 2000) ........................................................16

*Archibald v. Metro. Gov't of Nashville & Davidson Cnty.*,
    No. 11-0728, 2012 WL 3000137 (M.D. Tenn. July 23, 2012) ........................................20, 21

*Armstrong v. Unc-Lear Siegler, Inc.*,
    No 98-736, 1999 WL 123512 (N.D.N.Y. Mar. 1, 1999) ........................................8

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)........................................................17

*Bailey v. Turbine Design, Inc.*,
    86 F. Supp. 2d 790 (W.D. Tenn. 2000)........................................................14

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)........................................................17, 18

*Blessing v. Chandrasekhar*,
    988 F.3d 889 (6th Cir. 2021) ........................................................10, 13, 14

*Brannies v. Internet ROI, Inc.*,
    67 F. Supp. 3d 1365 (S.D. Ga. 2015)........................................................ 14-15

*Bright v. Monroe Cnty. Sheriff's Dep't*,
    No. 05-cv-264, 2008 WL 2401262 (E.D. Tenn. June 11, 2008) ........................................23

*Burger King Corp. v. Rudzewicz*,
    471 U.S. 462 (1985)........................................................11

*Bustos v. Lennon*,
    538 F. App'x 565 (5th Cir. 2013) ........................................................10

*Byrd v. State*,
    150 S.W.3d 414 (Tenn. Ct. App. 2004)........................................................23

*Cadle Co. v. Schlichtmann*,
    123 F. App'x 675 (6th Cir. 2005) ........................................................12, 14

*Calder v. Jones*,
    465 U.S. 783 (1984)........................................................13

*Carnett v. WBBJ-TV*,
No. 14-01309, 2015 WL 10714007 (W.D. Tenn. Sept. 8, 2015) ....................................21-22

*Chenault v. Walker*,
36 S.W.3d 45 (Tenn. 2001).......................................................................................................10

*Clark v. Viacom Int'l Inc.*,
617 F. App'x 495 (6th Cir. 2015) ............................................................................................19

*Cobb v. Time*,
278 F.3d 629 (6th Cir. 2002) ....................................................................................................23

*Conceivex, Inc. v. Rinovum Women's Health, Inc.*,
No. 16-11810, 2017 WL 3484499 (E.D. Mich. Aug. 15, 2017)..............................................16

*Daimler AG v. Bauman*,
571 U.S. 117 (2014)..............................................................................................................11, 12

*Davis v. Covenant Presbyterian Church*,
No. M2013-02273-COA-R3CV, 2014 WL 2895898 (Tenn. Ct. App. June 23,
2014) ..........................................................................................................................................25

*Embraer Aircraft Maint. Servs., Inc. v. Aerocentury Corp.*,
No. 14-cv-1584, 2015 WL 7572313 (M.D. Tenn. Nov. 24, 2015)..........................................17

*Ensing v. Sephora USA, Inc.*,
No. 21-cv-00421, 2022 WL 4097712 (M.D. Tenn. Sept. 6, 2022)..........................................14

*First Cmty. Bank, N.A. v. First Tenn. Bank, N.A.*,
489 S.W.3d 369 (Tenn. 2015)...................................................................................................12

*Funk v. Scripps Media, Inc.*,
570 S.W.3d 205 (Tenn. 2019)..............................................................................................20, 21

*Gallagher v. E.W. Scripps Co.*,
No. 08-2153, 2009 WL 1505649 (W.D. Tenn. May 28, 2009) ....................................18, 19, 20

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
564 U.S. 915 (2011)........................................................................................................11, 12, 13

*Grant v. Kia Motors Corp.*,
No. 14-cv-1584, 2014 WL 6680686 (M.D. Tenn. Nov. 25, 2014)..........................................16

*Hall v. Metro. Gov't of Nashville & Davidson Cnty.*,
No. 17-cv-01268, 2018 WL 305751 (M.D. Tenn. Jan. 5, 2018) .............................................25

*Hataway v. McKinley*,
830 S.W.2d 53 (Tenn. 1992).....................................................................................................17

*Hensley Mfg., Inc. v. Propride, Inc.*,
  579 F.3d 603 (6th Cir. 2009) ........................................................................17, 18

*Hill v. Old Navy, LLC*,
  20 F. Supp. 3d 643 (W.D. Tenn. 2014)..............................................................20, 21

*Int'l Shoe Co. v. Washington*,
  326 U.S. 310 (1945).........................................................................................10, 11

*Johansen v. Presley*,
  977 F. Supp. 2d 871 (W.D. Tenn. 2013) ...............................................................17

*Johnson v. Griffin*,
  No. 3:22-cv-000295, 2023 WL 2354910 (M.D. Tenn. Mar. 3, 2023)........................11, 13, 14

*Johnson v. The HuffingtonPost.com, Inc.*,
  21 F.4th 314 (5th Cir. 2021) ..................................................................................14

*Keeton v. Hustler Magazine, Inc.*,
  465 U.S. 770 (1984)................................................................................................13

*Kerry Steel, Inc. v. Paragon Indus, Inc.*,
  106 F.3d 147 (6th Cir. 1997) ..................................................................................11

*Kersey v. Wilson*,
  No. M2005-02106-COA-R3-CV, 2006 WL 3952899 (Tenn. Ct. App. Dec. 29,
  2006) ................................................................................................................22, 24

*Lake Charles Harbor & Terminal Dist. v. Reynolds Metal Co.*,
  No. 17-cv-1114, 2019 WL 638090 (W.D. La. Jan. 23, 2019); .................................10

*Malone v. Stanley Black & Decker, Inc.*,
  965 F.3d 499 (6th Cir. 2020) ...............................................................10, 11, 13, 14

*Masson v. New Yorker Magazine, Inc.*,
  501 U.S. 496 (1991)...........................................................................................18, 19

*Miller v. Calhoun Cnty.*,
  408 F.3d 803 (6th Cir. 2005) ....................................................................................7

*Milligan v. United States*,
  644 F. Supp. 2d 1020 (M.D. Tenn. 2009)................................................................21

*Milligan v. United States*,
  670 F.3d 686 (6th Cir. 2012) ..............................................................................20, 21

*Molthan v. Meredith Corp.*,
  No. 17-cv-00380, 2018 WL 691338 (M.D. Tenn. Feb. 2, 2018)..................................*passim*

*Mullin v. Butler*,
No. 18-0059, 2020 WL 11191821 (M.D. Tenn. Dec. 18, 2020) .............................................9

*Nelson v. HSBC Bank USA*,
No. 22-cv-12771, 2023 WL 4061662 (E.D. Mich. May 4, 2023) ..........................................8

*N.Y. Times Co. v. Sullivan*,
376 U.S. 254 (1964) ........................................................................................................23

*O'Keefe v. WDC Media, LLC*,
No. 13-6530, 2015 WL 1472410 (D.N.J. Mar. 30, 2015) ..................................................20

*Parker v. Winwood*,
938 F.3d 833 (6th Cir. 2019) ..................................................................................10, 13, 15

*Phila. Newspapers, Inc. v. Hepps*,
475 U.S. 767 (1986) ........................................................................................................18

*Press v. Verran*,
569 S.W.2d 435 (Tenn. 1978) .......................................................................................22, 23

*Pridy v. Piedmont Nat. Gas Co.*,
458 F. Supp. 3d 806 (M.D. Tenn. 2020) ............................................................................2, 5

*Ramsey v. Greenbush Logistics*,
263 F. Supp. 3d 672 (M.D. Tenn. 2017) ..........................................................................12, 13

*Reynolds v. Int'l Amateur Athletic Fed'n*,
23 F.3d 1110 (6th Cir. 1994) ...........................................................................................14

*Setzer v. First Choice Lending Servs., LLC*,
No. 17-CV-00147, 2018 WL 735194 (E.D. Tenn. Feb. 6, 2018) .........................................23

*SFS Check, LLC v. First Bank of Del.*,
774 F.3d 351 (6th Cir. 2014) ...........................................................................................10

*Smith v. Reed*,
944 S.W.2d 623 (Tenn. Ct. App. 1996) ...........................................................................21

*Snyder v. Phelps*,
562 U.S. 443 (2011) ........................................................................................................18

*Stones Rover Motors, Inc. v. Mid-South Publ'g Co.*,
651 S.W.2d 713 (Tenn. Ct. App. 1983) ...........................................................................18

*Sullivan v. Baptist Mem'l Hosp.*,
995 S.W.2d 569 (Tenn. 1999) .........................................................................................22

*United States v. Butler*,
    694 F.3d 1177 (10th Cir. 2012) ..................................................................20

*Walden v. Fiore*,
    571 U.S. 277 (2014)...................................................................13, 14, 15

*Weisskopf v. United Jewish-Appeal Fed'n of Jewish Philanthropies of N.Y., Inc.*,
    889 F. Supp. 2d 912 (S.D. Tex. 2012) ......................................................10

*West v. Media Gen. Convergence, Inc.*,
    53 S.W.3d 640 (Tenn. 2001)...............................................18, 21, 24, 25

*Whitehead v. Viacom*,
    233 F. Supp. 2d 715 (D. Md. 2002) .............................................................8

*Whitmore v. Green Tree Servicing, LLC*,
    658 F. App'x 793 (6th Cir. 2016) ...............................................................7

*Wooden v. Seigenthaler*,
    No. 86-1461986, 1986 WL 11279 (Tenn. Ct. App. Oct. 8, 1986)...........20

## Statutes

Tenn. Code Ann. § 20-4-104 ............................................................................16

## Other Authorities

Fed. R. Civ. P. 15..............................................................................................7

L.R. 7.01 ...........................................................................................................9

L.R. 15.01(a)(1) ................................................................................................9

*Poach*, https://www.merriam-webster.com/dictionary/poach (last visited July 19,
    2023) ..........................................................................................................19

*Poach*, https://www.oed.com/search/dictionary/?scope=Entries&q=poach (last
    visited July 21, 2023)................................................................................19

*Poach*, https://www.dictionary.com/browse/poach (last visited July 21, 2023)...........................19

Restatement (Second) of Torts § 580 B (1977) ..............................................22

Restatement (Second) of Torts § 652E (1977) ...............................................24

**INTRODUCTION**

Instead of responding to Defendant's motion to dismiss the first amended complaint identifying fatal personal jurisdiction, venue, and substantive pleading deficiencies, Plaintiffs filed a motion to amend pursuant to Federal Rule of Civil Procedure 15(a). Because filing an amended complaint in state court prior to removal prevents a second opportunity to amend without leave, this motion is governed by Federal Rule of Civil Procedure 15(a)(2). Rule 15(a)(2) does not permit leave when amendment would be futile, which is the case here. Plaintiffs also failed to comply with this Court's local rules requiring them to confer with Hearst and to submit support for their motion.

Substantively, the proposed Second Amended Complaint ("Second Complaint" or "SAC") (ECF No. 19-1) does not cure the deficiencies of the first amended complaint. For example, despite Plaintiffs' added conclusion to the contrary and their highlighting of the word "poaching," nothing in the Second Complaint changes the fact that this action arises from fair and accurate reporting of a matter of public interest by Iowa-based broadcast station KCCI-TV, namely, charges against and guilty pleas entered by each of Plaintiffs in Nebraska federal court in October 2022 for conspiring to violate the federal Lacey Act, 16 U.S.C. §§ 3371-3378. That statute makes it unlawful to obtain and transport wildlife in interstate commerce that was obtained in violation of state or federal wildlife protection laws, *i.e.*, wildlife that was "poached." Thus, similar to the first amended complaint, the Second Complaint's causes of action for defamation and defamation by false light against Hearst arising from the broadcast and website publication of the news story, "Ankeny Couple Pleads Guilty in Federal Poaching Case," are not viable. The news story accurately reported that Plaintiffs (now convicted and serving three years' probation), famous for their viral bow-hunting videos, pleaded guilty to a misdemeanor

conspiracy charge in a federal case that charged them with participating in a series of hunts in which another entity used illegal bait traps. Thus, the reports remain substantially true and are privileged as fair reports of official proceedings.

Plaintiffs allege that they conduct business in Williamson County and that Hearst, a New York-based Delaware corporation that owns KCCI-TV, does business in Tennessee through KCCI's interactive website and distributed the website content in Tennessee to unidentified individuals. That does not cure the defects of the prior pleading. As demonstrated by the materials accompanying Hearst's motion to dismiss and submitted herewith, Hearst is not authorized to do business in and has no employees or physical presence in Tennessee. The news story at issue, which described events that happened in Nebraska federal court, was reported and broadcast from Iowa by an Iowa-based television station. Any purported connection Plaintiffs' attempt to draw to Tennessee is too attenuated and legally insufficient to establish personal jurisdiction over Hearst. For similar reasons, Plaintiffs' conclusory venue allegations do not make venue proper in this district. Plaintiffs should be foreclosed from filing another complaint.

### ALLEGATIONS OF THE PROPOSED SECOND COMPLAINT AND RELEVANT FACTS

***Plaintiffs' Criminal History.***[1] On July 23, 2020, federal prosecutors charged Plaintiff Josh Bowmar, Plaintiff Sarah Bowmar, and their business, Bowmar Bowhunting, LLC, in the

---

[1] In support of its motion to dismiss, Defendant submitted public records and other materials that are appropriate for the taking of judicial notice. *Pridy v. Piedmont Nat. Gas Co.*, 458 F. Supp. 3d 806, 814 (M.D. Tenn. 2020) (citation omitted); *see also Molthan v. Meredith Corp.*, No. 17-cv-00380, 2018 WL 691338, at *12 (M.D. Tenn. Feb. 2, 2018), *report and recommendation adopted*, 2018 WL 2387235 (M.D. Tenn. May 25, 2018). For consideration in connection with this Motion, reattached hereto are Ex. 1: Information (Dkt. 1), *United States v. Bowmar*, No. 8:20-CR-178 (D. Neb. July 23, 2020); Ex. 2: Plea Agreement (Dkt. 103), *United States v. Josh Bowmar*, No. 8:20-CR-178 (D. Neb. Oct. 19, 2022); Ex. 3: Plea Agreement (Dkt. 105), *United States v. Sarah Bowmar*, No. 8:20-CR-178 (D. Neb. Oct. 19, 2022); Ex. 4: Plea Agreement (Dkt. 107), *United States v. Bowmar Bowhunting, LLC*, No. 8:20-CR-178 (D. Neb. Oct. 19, 2022); Ex. 5: Judgment in a Criminal Case (Dkt. 132), *United States v. Josh Bowmar*, No. 8:20-CR-178 (D.

United States District Court for the District of Nebraska for violating the Lacey Act, 16 U.S.C.

§§ 3372(a)(2)(A) and 3373(d)(2), and conspiring to violate the Act under 18 U.S.C. § 371, over

the period September 10, 2015, through November 6, 2017. Ex. 1 ("Information") ¶ 17.

According to the Information, the Lacey Act

> makes it unlawful for a person to, among other things, knowingly transport, sell, receive, acquire or purchase wildlife, in interstate commerce, which has been taken, possessed, transported, or sold in violation of a wildlife-related state or federal law, and which the person knows, or in the exercise of due care should know, was taken, possessed, transported, or sold in violation of a state or federal law or regulation related to wildlife protection.

*Id.* ¶ 5. More than two years later, on October 19, 2022, plea agreements were filed in the

District of Nebraska. The Bowmars and Bowmar Bowhunting (a hunting and outdoor video

production company), "agree[d] to plead guilty to Count I of the Information" and agreed to

forfeit $44,000, comprising "the proceeds from the conspiracy to possess, transport, or sell fish

or wildlife." Exs. 3, 4, 5 at 1. The court entered judgment and sentenced Plaintiffs each to three

years' probation and imposed fines in January 2023. Exs. 5, 6 at 2-7.

Count I of the Information—to which they pleaded guilty—charged that Plaintiffs had an

ongoing business relationship with Hidden Hills Outfitters (HHO) and "willfully and knowingly

conspired, combined, confederated and agreed together and with each other, and with others

known to the Grand Jury, to commit an offense against the United States: A) To knowingly

transport, and attempt to transport, receive, and acquire wildlife, that is, turkey and deer, or parts

---

Neb. Jan. 17, 2023); Ex. 6: Judgment in a Criminal Case (Dkt. 134), *United States v. Sarah Bowmar*, No. 8:20-CR-178 (D. Neb. Jan. 17, 2023); Ex. 7: Press Release, U.S. Attorneys' Office, District of Nebraska, "Bowmar Bowhunting and Owners Josh and Sarah Bowmar Sentenced for Conspiracy to Violate the Lacey Act" dated January 17, 2023, available at https://www.justice.gov/usao-ne/pr/bowmar-bowhunting-llc-and-owners-josh-and-sarah-bowmar-sentenced-conspiracy-violate, last visited June 7, 2023; Ex. 8: Declaration of Brian Sather in Support of Defendant's Motion to Dismiss Plaintiffs' First Amended Complaint, dated June 9, 2023; Ex. 9: Petition (Dkt. 1), *Bowmar Archery LLC, et al. v. Making Hunting Great Again LLC*, No. 05771 LACL154072 (Iowa. Dist. Ct. Polk Cnty. Oct. 10, 2022).

thereof, in interstate commerce, when in the exercise of due care, the defendant should have known that said wildlife was taken, possessed, and transported in violation of and in a manner under the regulations of Nebraska, . . . all in violation of [the Lacey Act] . . . ." Ex. 1 ¶ 17.  The Information set forth numerous overt acts by Plaintiffs in violation of Nebraska and federal gaming laws in furtherance of the conspiracy, including "purchas[ing] hunting and guiding services from HHO for the purposes of taking, possessing, and acquiring wildlife in violation of the laws and regulations of the State of Nebraska," (*id.* ¶ 18), "routinely and intentionally hunt[ing] white-tailed deer within HHO baited areas," (*id.* ¶ 21), and knowingly and unlawfully archery hunting deer in baited area, establishing, using or maintaining baited areas, killing wild turkey and deer in baited areas without a permit, transporting illegally taken wildlife in interstate commerce and publishing video and other content of the unlawful hunts (concealing evidence of the unlawful bait sites) on the BBH YouTube channel and Instagram account, (*id*. ¶¶ 27A-Y). *See also id.* ¶¶ 18–26 (describing additional acts comprising the conspiracy).

In their guilty pleas, Plaintiffs acknowledged they committed *each of the elements of the conspiracy* and expressly admitted that they:

- initiated an ongoing relationship with HHO and conducted three to five hunts a year at HHO;
- "agreed together and with each other to knowingly attempt to transport wildlife, or parts thereof, in interstate commerce, when in the exercise of due care, [they] should have known that said wildlife was attempted to be taken, possessed, and transported in violation of and in a manner unlawful under the regulations of Nebraska;"
- "agreed to purchase hunting and guiding services from HHO for the purposes of taking, possessing, and acquiring wildlife, some of which was attempted to be taken in violation of the laws and regulations of the State of Nebraska" and that said "[w]ildlife taken, possessed, and acquired in the State of Nebraska was transported in interstate commerce from the State of Nebraska into Ohio," and
- "recorded, produced, and published photographs, videos, and other media content related to HHO hunts . . . upon various internet or social media platforms, [on BBH's Instagram and YouTube sites] and www.bowmarbowhunting.com the BBH internet webpage."

Exs. 2, 3, 4 at 3–4.

*News Reports of Plaintiffs' Guilty Pleas.* Following their guilty pleas, Iowa-based KCCI-TV broadcast from Iowa a short news story about the "famous" couple and published that same video content on its website along with a text article under the heading "Ankeny Couple Pleads Guilty in Federal Poaching Case." SAC ¶¶ 5, 7; Ex. 8 ¶¶ 7–8 & Exs. A, B.[2]  The web article stated:

> ANKENY, Iowa — An Ankeny couple famous for their viral bow-hunting videos is pleading guilty in a federal poaching case.
>
> Josh and Sarah Bowmar are among dozens of people charged in a case against the Nebraska-based company Hidden Hills Outfitters.
>
> The Bowmars have more than one million followers on Instagram and 288,000 subscribers on YouTube.
>
> Prosecutors say the couple documented a series of guided hunts in which Hidden Hills and its owner used illegal bait traps to attract white-tailed deer.
>
> The Bowmars have pleaded guilty to a misdemeanor conspiracy charge.
>
> But they could face a maximum of $200,000 in fines at their sentencing. Court records show that is scheduled for January.

Ex. 8 at Ex. B.  The broadcast contained substantially the same content.  Ex. 8 at Ex. A.

*Plaintiffs File this Lawsuit.*  Plaintiffs filed a complaint and a first amended complaint against Hearst in the Circuit Court for Williamson County, Tennessee on March 1 and 2, 2023 alleging libel *per se* and defamation by false light.  ECF No. 1-1 at 5, 10.  Both pleadings and a summons dated March 20, 2023, were mailed to Hearst's registered agent for service of process in Delaware.  ECF No. 1-1 at 3–4.  Hearst, a Delaware corporation with a principal place of business in New York (*see* Ex. 8 ¶ 2), removed to this Court pursuant to 28 U.S.C. §§ 1332,

---

[2] This Court may consider the broadcast (Ex. 8 at Ex. A) and web article (*id.*, Ex. B) referred to in the pleadings.  Fed. R. Civ. P. 10(c); *see, e.g.*, *Mothan*, 2018 WL 691338, at *12 (taking judicial notice of television program in libel case); *Piedmont Nat. Gas*, 458 F. Supp. 3d at 814.

1441, and 1446. ECF No. 1. It timely moved to dismiss on June 9, 2023. ECF Nos. 11, 12. In response to Hearst's motion, Plaintiffs stated that it was mooted by their motion to amend. ECF No. 18. Plaintiffs filed the instant threadbare motion, with a copy of the Second Complaint. ECF No. 19.

In the Second Complaint Plaintiffs allege that Hearst, a New York-based Delaware corporation owns the television station KCCI-TV and, adding a few new words, that it conducts business in Tennessee "by and through the interactive website it maintains and publishes at www.kcci.com." SAC ¶ 2. Similar to the first, the Second Complaint states that Hearst "created and directed the program and article at issue and distributed them in the Middle District of Tennessee on or about November 1, 2022 and thereafter through its website." *Id.*

Plaintiffs aver that they are successful entrepreneurs, hunters and fitness professionals who do business in Tennessee. *Id.* ¶ 1. In their guilty pleas, they admit that their business was organized in the state of Ohio. Exs. 2–4 at 3. They still do not allege their state of residence; however, their guilty pleas state that they were residents of Ohio at the time of the conspiracy. Exs. 2–4 at 2. In a separate lawsuit filed in Iowa in October, 2022, Plaintiffs allege they reside in Iowa. Ex. 9 ¶¶ 5, 6; *see also* Ex. 7 (U.S. Department of Justice press release states residence in Iowa); Ex. 8 at Ex. B.

Plaintiffs allege that Hearst, as KCCI-TV's owner, broadcast on its program and over the internet defamatory statements about the Bowmars that were false when made and known to be false when made. SAC ¶¶ 5, 8. They allege the statement, "Ankeny Couple Pleads Guilty in Federal Poaching Case," is defamatory because they aver they did not plead guilty to poaching but only conspiracy to violate the Lacey Act. *Id.* ¶¶ 5, 7, 8. Plaintiffs allege the statements were broadcast with reckless disregard as to whether they were true or not because Hearst knew all but

one of the charges were dropped. *Id.* ¶ 7. Further, the purportedly false statements were broadcast with an allegedly "malicious, disgraceful, and vilifying" title, "in order to attract viewers." *Id.* ¶ 7, *see also id*. ¶¶ 8, 13–14. Plaintiffs now aver that "poaching" has a special meaning in the hunting community but still conclude that the news article placed them in a false light "offensive to a reasonable person." *Id.* ¶ 11. Their reputations were damaged as a result. *Id.* ¶¶ 9, 11, 14–15. Those allegations, they aver, support claims of the torts of false light and defamation. *Id.* ¶¶ 10–15. They continue to seek $100,000 in compensatory damages, $100,000 in punitive damages, destruction of the broadcasts and a published retraction. *Id.* at 5.

## ARGUMENT

Because Plaintiffs have already filled a first amended complaint (*see* ECF No. 1-1), Plaintiffs' motion for leave to amend should be denied to the extent it seeks an amendment as of right under Federal Rule of Civil Procedure 15(a)(1)(B). *See* Point I.A. Motions to amend where leave of court is required and there is not yet a scheduling order, as here, are governed by Federal Rule of Civil Procedure 15(a)(2). Under Rule 15(a)(2), amended pleadings are only permitted upon consent of the opposing party or with the court's leave. Fed. R. Civ. P. 15(a)(2). No consent was obtained; therefore, this Court must determine whether to grant leave pursuant to precedents defining when "justice so requires." *Id.* Since justice is not served when, among other reasons, a motion to amend would be futile, courts should deny motions to leave where the proposed amended pleading would not survive dismissal under Federal Rule of Civil Procedure 12(b). *Miller v. Calhoun Cnty.*, 408 F.3d 803, 817 (6th Cir. 2005); *Whitmore v. Green Tree Servicing, LLC*, 658 F. App'x 793, 796-98 (6th Cir. 2016) (affirming denial of motion to amend where amendment was futile). Before making the substantive futility determination under Rule 15(a)(2), however, the Court should evaluate whether Plaintiffs have satisfied Local Civil Rules

7.01 and 15.01's procedural requirements for a valid motion. As explained in Points I.B and I.C, Plaintiffs did not comply and their motion should be denied. The Second Complaint suffers the same deficiencies as the first amended complaint addressed in Defendant's motion to dismiss and below: it does not state a prima facie case of personal jurisdiction, venue is improper in this Court, the reporting was substantially true, the fair report privilege protects Hearst from liability as a matter of law, and Plaintiffs do not otherwise state a claim for defamation or false light. *See* Points II-IV. This Court should deny Plaintiffs' motion and dismiss the case.

**I. Plaintiffs Did Not Comply with the Federal Rules of Civil Procedure or the Local Civil Rules of this Court.**

**A. Plaintiffs Are Not Entitled to an Amendment as of Right**

Plaintiffs' cursory motion to amend implies that they are seeking to amend pursuant to Federal Rule of Civil Procedure 15(a)(1)(B) since they refer to amending within 21 days of Hearst's motion to dismiss. ECF No. 19 at 1. Rule 15(a)(1)(B) is inapplicable here because Plaintiffs have already filed and served both an initial and first amended complaint in state court. ECF No. 1-1 at 5, 10; *see Armstrong v. Unc-Lear Siegler, Inc*., No 98-736, 1999 WL 123512, at *3 (N.D.N.Y. Mar. 1, 1999) (pre-removal amendment preluded second amended complaint as of right); *Nelson v. HSBC Bank USA*, No. 22-cv-12771, 2023 WL 4061662, at *1 (E.D. Mich. May 4, 2023) (denying motion to amend under Rule 15(a)(1) where first amended pleading already filed); *Whitehead v. Viacom*, 233 F. Supp. 2d 715, 719 (D. Md. 2002) (finding no support in law for second pleading as of right when first amended complaint filed in state court). "Following removal, federal courts recognize all prior pleadings, orders and other proceedings in the state court action and presume them valid;" therefore, Plaintiffs here require leave under Federal Rule of Civil Procedure 15(a)(2). *Armstrong*, 1999 WL 123512, at *3.

### B.    Plaintiffs Did Not Meet and Confer

Local Civil Rule 7.01(a)(1) requires litigants to meet and confer with their opponents

before filing non-dispositive motions and to indicate in their motion papers the results of those

conversations.  L.R. 7.01(a)(1).  Motions to amend under Federal Rule of Civil Procedure 15 are

not exceptions.  *Id*. (listing motions excepted from meet and confer requirement).  Local Rule

15.01(a)(2) similarly requires a party seeking to make a motion to amend a pleading to state in

the motion that "counsel for the moving party has conferred with all opposing counsel about the

proposed amendment and whether or not the motion to amend is opposed."  There is no

reference in the instant motion that Plaintiffs' counsel made any attempts to confer with Hearst's

counsel (and Defendant's counsel are not aware of any such attempts).  ECF No. 19.  Plaintiffs'

failure to satisfy this threshold requirement for their motion mandates its denial.  *See, e.g.*, *Mullin*

*v. Butler*, No. 18-0059, 2020 WL 11191821, at *1 (M.D. Tenn. Dec. 18, 2020) (denying motion

to amend answer, in part, for party's failure to comply with local rules 7.01(a)(1) and

15.01(a)(2)).

### C.    Plaintiffs Did Not Support Their Motion to Amend

Motions to amend pleadings must "[d]escribe the reasons supporting the proposed

amendments and the substance of the amendments sought."  L.R. 15.01(a)(1).  If a motion may

require resolution of an issue of law, it must include a memorandum of law.  L.R. 7.01(a)(2).

That rule applies to motions to amend pleadings.  *See Mullin*, 2020 WL 11191821, at *1

(denying motion to amend where party failed to submit brief).  Plaintiffs' motion to amend

neither describes the reasons for the amendments nor contains a separate memorandum of law.

ECF No. 19.  It should be denied.

## II.     Plaintiffs' Proposed Second Complaint is Futile Because It Does Not State a *Prima Facie* Case of Personal Jurisdiction Over Hearst

When an amended complaint fails to cure jurisdictional defects in the previous pleading, the Court should deny the motion to amend. *See, e.g.*, *SFS Check, LLC v. First Bank of Del.*, 774 F.3d 351, 355-57 (6th Cir. 2014) (affirming denial of motion to amend and dismissal based on lack of personal jurisdiction); *Weisskopf v. United Jewish-Appeal Fed'n of Jewish Philanthropies of N.Y., Inc.*, 889 F. Supp. 2d 912, 926 (S.D. Tex. 2012) (granting motion to dismiss and denying motion to amend where amended complaint did not cure jurisdictional defects); *Lake Charles Harbor & Terminal Dist. v. Reynolds Metal Co.*, No. 17-cv-1114, 2019 WL 638090, at *4 (W.D. La. Jan. 23, 2019); *Bustos v. Lennon*, 538 F. App'x 565, 567-69 (5th Cir. 2013). Here, Plaintiffs' few added words to the Second Complaint do not do so for the reasons below.

In diversity cases, federal courts apply the substantive law of the forum state and may only exercise personal jurisdiction over a defendant if a court in the forum state could do so, subject to the limits of due process. *Blessing v. Chandrasekhar*, 988 F.3d 889, 901 (6th Cir. 2021); *Malone v. Stanley Black & Decker, Inc.*, 965 F.3d 499, 502 (6th Cir. 2020). The Tennessee long-arm statute permits a federal court to exercise personal jurisdiction over a defendant if that jurisdiction is within the boundaries of constitutional due process. *Chenault v. Walker*, 36 S.W.3d 45, 52 (Tenn. 2001). Thus, this Court need only determine whether exercising personal jurisdiction would comport with constitutional due process. *Parker v. Winwood*, 938 F.3d 833, 839 (6th Cir. 2019).

Plaintiffs need to present a prima facie case of personal jurisdiction by establishing sufficient minimum contacts by Hearst in the forum that would not offend "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (citations omitted). Within those notions, personal jurisdiction may be general or specific.

*Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014); *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985).  General, all-purpose, jurisdiction is present in the forum when an out-of-state defendant's "affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum state" in order to "justify the state's exercise of judicial power with respect to any and all claims . . . ."  *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (quoting *Int'l Shoe*, 326 U.S. at 317); *Kerry Steel, Inc. v. Paragon Indus., Inc.*, 106 F.3d 147, 149 (6th Cir. 1997).  A court may assert specific jurisdiction when there is sufficient affiliation between the forum and the underlying controversy, *i.e.*, an activity or occurrence that takes place in the forum state such that the court would be adjudicating the very controversy that establishes jurisdiction.  *Goodyear*, 564 U.S. at 919.

If plaintiff makes a prima facie case for the exercise of personal jurisdiction in his complaint, the burden shifts to the defendant, whose motion must be supported with evidence. *Malone*, 965 F.3d at 504; *Johnson v. Griffin*, No. 22-cv-000295, 2023 WL 2354910, at *2 (M.D. Tenn. Mar. 3, 2023), *appeal docketed*, No. 23-5257 (6th Cir. Mar. 29, 2023).  Plaintiff may not then rest on his pleadings and must, by affidavit or otherwise, set forth specific facts showing that the court has personal jurisdiction.  *Malone*, 965 F.3d at 504.  Here, Plaintiffs have neither made a prima facie showing of general or specific jurisdiction in their Second Complaint nor will they be able to overcome the evidence submitted by Hearst to avoid dismissal.  *See* Points I.B and I.C.

A.      **Plaintiffs Have Not Alleged a Prima Facie Case and Cannot Otherwise Establish General Personal Jurisdiction Over Defendant in Tennessee**

Hearst is not subject to general jurisdiction in Tennessee, as it is not "at home" in the state.  Plaintiffs allege that defendant Hearst is incorporated in Delaware and located in New York, New York.  SAC ¶ 2.  A corporation's principal place of business and place of

incorporation, here Delaware and New York (Ex. 8 ¶ 2), are the paradigm bases for general jurisdiction and, while they are not the only bases, general jurisdiction requires a showing that the defendant's relationship with Tennessee is more substantial that its relationship with other numerous forums; doing business in the state is not enough. *First Cmty. Bank, N.A. v. First Tenn. Bank, N.A.*, 489 S.W.3d 369, 383 (Tenn. 2015); *Daimler*, 571 U.S. at 138-39; *Goodyear*, 564 U.S. at 924; *Ramsey v. Greenbush Logistics, Inc.*, 263 F. Supp. 3d 672, 676-77 (M.D. Tenn. 2017).

Plaintiffs slightly modify their previous pleading to allege that Hearst "conducts business in the Middle District of Tennessee, by and through the interactive website it maintains and publishes at www.kcci.com." SAC ¶ 2. It is still the case that alleging internet presence, without identifying where the underlying internet conduct took place, is not sufficient to justify general jurisdiction. *Cadle Co. v. Schlichtmann*, 123 F. App'x 675, 677 (6th Cir. 2005) (affirming dismissal); *see also First Cmty. Bank*, 489 S.W.3d at 383 (sufficient contacts must be plead with particularity). Likewise, the operation of a website that is accessible to anyone over the internet does not confer general personal jurisdiction; that activity does not "approximate physical presence within the state's borders." *Cadle*, 123 F. App'x at 677 (citation omitted). Here, not only do Plaintiffs fail to allege actual facts showing any internet conduct in Tennessee (or what "interactions" took place on this news website), their Second Complaint, like the first, acknowledges that Defendant's business consists of owning an Iowa-based broadcast television station, suggesting any internet conduct necessarily originated in Iowa (SAC ¶¶ 2, 6) and negating any notion of continuous and systemic contacts in Tennessee.

The declaration and documents supporting this resistance foreclose any possibility of general personal jurisdiction in Tennessee. Hearst is a Delaware corporation with its principal

place of business in New York. Ex. 8 ¶ 2; *Goodyear*, 564 U.S. at 924; *Ramsey*, 263 F. Supp. 3d at 676-77. It is not qualified to do business in Tennessee and does not maintain any physical presence or employees in Tennessee. Ex. 8 ¶ 3. Broadcasts from its FCC-licensed station, KCCI-TV, are reported in Iowa and directed over airwaves and via cable outlets to cable subscribers in Iowa. *Id.* ¶ 5. The content on KCCI's website is published from Iowa. *Id.* ¶ 6.

**B.**     **Plaintiffs Have Not Sufficiently Alleged a Prima Facie Case and Cannot Otherwise Establish Specific Personal Jurisdiction Over Defendant in Tennessee**

The Second Complaint does not allege specific personal jurisdiction over Hearst in Tennessee. To maintain specific personal jurisdiction, the plaintiff must assert, with reasonable particularity, sufficient contacts relating to the suit between the defendant and the forum state. *Malone*, 965 F.3d at 504. "Th[is] 'minimum contacts' analysis depends on the defendant's contact with the forum, 'not the defendant's contacts with persons who reside there.'" *Blessing*, 988 F.3d at 904 (quoting *Walden v. Fiore*, 571 U.S. 277, 285 (2014)); *Johnson*, 2023 WL 2354910, at *3. In other words, the defendant's "suit-related conduct" must establish "'a substantial connection' with Tennessee" in order for the defendant to have purposefully availed itself of the privilege of acting in the forum state. *Parker*, 938 F.3d at 839 (quoting *Walden*, 571 U.S. at 284); *Johnson*, 2023 WL 2354910, at *3.

In tort actions arising from publications, the U.S. Supreme Court established benchmarks to analyze whether due process will permit a court to exercise specific jurisdiction over a non-resident publisher in a pair of decisions in 1984. *See Calder v. Jones*, 465 U.S. 783 (1984); *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770 (1984). Under the so-called "effects" test, purposeful availment may only be found where a libel defendant publishes material "expressly aimed" at the forum state, with knowledge that the brunt of the harm would occur there. *Calder*, 465 U.S. at 789-90. Following the reasoning in *Calder* and *Keeton*, the Supreme Court held in

*Walden* that a Georgia defendant who seized money and drafted an allegedly false affidavit about Nevada plaintiffs was not subject to personal jurisdiction in Nevada where the defendant had "formed no jurisdictionally relevant contacts with Nevada"; acting from Georgia to allegedly direct his conduct at plaintiffs who the defendant knew had Nevada connections did not connect the defendant to Nevada in a meaningful way. 571 U.S. at 289-90.

Consistent with the aforementioned decisions, the Sixth Circuit Court of Appeals has affirmed the dismissal of defamation suits for want of personal jurisdiction where the publication originated out-of-state. *See, e.g.*, *Blessing*, 988 F.3d at 904-06; *Cadle*, 123 F. App'x at 679; *Reynolds v. Int'l Amateur Athletic Fed'n*, 23 F.3d 1110, 1116-20 (6th Cir. 1994); *see also Johnson*, 2023 WL 2354910, at \*2-3; *Ensing v. Sephora USA, Inc.*, No. 21-cv-00421, 2022 WL 4097712, at \*3 (M.D. Tenn. Sept. 6, 2022); *Bailey v. Turbine Design, Inc.*, 86 F. Supp. 2d 790, 794-97 (W.D. Tenn. 2000).

Plaintiffs' conclusory allegations that Hearst "operates an interactive website by and through which it publishes, disseminates, and broadcasts its news and other forms of communications to a broad internet audience" and "published, disseminated and communicated the false statements" in this district and that the news story was received by unidentified people in Tennessee, together with the allegation that Plaintiffs conduct business in Tennessee do not approach the necessary particularized *prima facie* showing of purposeful availment. SAC ¶¶ 1, 2, 5, 6; *see, e.g.*, *Malone*, 965 F.3d at 504; *Johnson v. The HuffingtonPost.com, Inc.*, 21 F.4th 314, 317-19 (5th Cir. 2021) (no specific jurisdiction over libel defendant where no activities took place in Texas even though article was about a Texas resident's out of state activities and website was alleged to be interactive); *Ensing*, 2022 WL 4097712, at \*3 (viewing in Tennessee of alleged defamatory content not sufficient to establish personal jurisdiction); *Brannies v. Internet*

*ROI, Inc.*, 67 F. Supp. 3d 1365, 1368-69 (S.D. Ga. 2015). The Second Complaint remains devoid of any allegation that Hearst engaged in any activity in Tennessee, that any events about which Hearst reported occurred in Tennessee, that Hearst could have been aware of Plaintiffs' averred business conduct in Tennessee or of any effect of the broadcast in Tennessee. Instead, the report identifies Plaintiffs as residing in Ankeny, Iowa. Ex. 8 at Exs. A, B; *see also* Exs. 7, 9 ¶¶ 5, 6; ECF No. 19-2. The guilty pleas and charges about which KCCI reported state that Plaintiffs were, at the time of the admitted conspiracy, residents of Ohio. Exs. 2, 3 at 2; Ex. 1 ¶ 1. And the activities comprising the charges and acts in furtherance of the admitted federal conspiracy took place in Nebraska and in interstate commerce to Ohio, the charges were filed and guilty pleas entered in the District of Nebraska, and the underlying state laws that Plaintiffs conspired to violate were those of Nebraska. Exs. 2, 3 at 2; Ex. 1 ¶ 17.

Moreover, Plaintiffs' new conclusory allegations do not overcome the declaration submitted herewith, which makes plain that Hearst's "suit-related conduct" did not create any connection with Tennessee, much less the necessary substantial one. *Parker*, 938 F.3d at 839 (quoting *Walden*, 571 U.S. at 284). KCCI-TV broadcasted and posted the subject video and posted the analogous web article from its location in Des Moines, Iowa. Ex. 8. ¶ 9. No KCCI employee visited Tennessee, communicated with anyone in Tennessee or visited Tennessee in the course of creating or publishing the story. *Id.* ¶ 11. And, KCCI did not broadcast the story over airwaves in Tennessee or to outlets in Tennessee. *Id.* ¶ 10. As such, Hearst's suit-related connections to Tennessee are even fewer than those of defendants in the cited decisions, *supra*, where plaintiffs failed to make a particularized *prima facie* case of specific personal jurisdiction. Even considering the facts in the light most favorable to Plaintiffs, personal jurisdiction over Hearst in Tennessee is not possible, and Plaintiffs' motion should be denied as futile.

**III.**     **Plaintiffs' Second Complaint Does Not Allege Proper Venue in Tennessee**

Plaintiffs' motion to amend should be denied because the Second Complaint does not support venue in this district.  *See, e.g.*, *Conceivex, Inc. v. Rinovum Women's Health, Inc*., No. 16-11810, 2017 WL 3484499, at *5 (E.D. Mich. Aug. 15, 2017) (denying motion to amend where venue improper); *Amaker v. Haponik*, 198 F.R.D. 386, 390-92 (S.D.N.Y. 2000) (same). As was briefed in Defendant's motion to dismiss, the relevant question in this removed action is whether, under Tennessee law, venue was proper in Williamson County, Tennessee where the case was originally filed.  *Grant v. Kia Motors Corp*., No. 14-cv-1584, 2014 WL 6680686, at *2-3 (M.D. Tenn. Nov. 25, 2014).  Under Tennessee's applicable venue provisions, an out-of-state defendant corporation is subject to suit in the following venues: "(1) The county where all or a substantial part of the events or omissions giving rise to the cause of action accrued;" or "(3)(A) If the defendant is not organized under the laws of this state, the county where the defendant's registered agent for service of process is located; (B) If the defendant does not maintain a registered agent within this state, the county where the person designated by statute as the defendant's agent for service of process is located."  Tenn. Code Ann. § 20-4-104; *see also Grant*, 2014 WL 6680686, at *3-4.

As previously described, Plaintiffs cannot establish and have not sufficiently pled that any actions or omissions giving rise to their claims occurred in Tennessee.  *See supra* Point II.C. Hearst does not have a registered agent in the state.  Ex. 8 ¶ 3.  And, because Hearst is not qualified to do business in Tennessee, venue is improper under Tenn. Code. Ann. § 20-4-104(3)(B).  *See Grant*, 2014 WL 6680686, at *4; Ex. 8 ¶ 3.  Accordingly, Plaintiffs' motion to amend should be denied as futile because venue is improper under Tenn. Code Ann. §§ 20-4-104(1) and (3)(A) & (B).

## IV.    Plaintiffs' Motion to Amend Should Be Denied Because the Second Complaint is Dismissible Under Rule 12(b)(6)

Should this Court determine that personal jurisdiction over Hearst in Tennessee and venue are proper, Plaintiffs' motion to amend still must be denied as futile for its failure to state claims for both defamation and false light invasion of privacy under Tennessee law.[3]  *See, e.g.*, *Embraer Aircraft Maint. Servs., Inc. v. Aerocentury Corp.*, No. 14-cv-1584, 2015 WL 7572313, at *3-5 (M.D. Tenn. Nov. 24, 2015) (denying motion to amend where new claim failed to state a claim under Rule 12(b)(6)).  As briefed in Defendant's motion to dismiss, although Rule 8(a)(2) of the Federal Rules of Civil Procedure does not require "detailed factual allegations," it does require more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action."  *Hensley Mfg., Inc. v. Propride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  To survive a motion to dismiss (and sustain a motion to amend), the plaintiff must allege facts that, if accepted as true, are sufficient "to raise a right to relief above the speculative level," and to "state a claim to relief that is plausible on its face."  *Id.* (quoting *Twombly*, 550 U.S. at 570; *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (quoting *Iqbal*, 556 U.S. at 678).  And although the Court must accept all well-pleaded factual allegations in the

---

[3] A federal court sitting in diversity applies the substantive law of the forum state, including its choice of law analysis.  *Johansen v. Presley*, 977 F. Supp. 2d 871, 881 (W.D. Tenn. 2013).  Under Tennessee law, the substantive law to be applied is that which has the "most significant relationship" to the personal injury tort.  *Id.*  That approach mandates that courts apply "the local law of the state where the injury occurred . . . unless, with respect to the particular issue, some other state has a more significant relationship."  *Id.* (quoting *Hataway v. McKinley*, 830 S.W.2d 53, 59 (Tenn. 1992)).  Although there are insufficient "facts" alleged in the Second Complaint concerning the location of Plaintiffs' purported injury to conduct any meaningful choice of law analysis, Defendant applies Tennessee substantive law for purposes of this opposition, but expressly does not waive its right to challenge application of Tennessee law if this case proceeds.

Second Complaint as true, it need not "accept as true a legal conclusion couched as a factual allegation." *Id.* (quoting *Twombly*, 550 U.S. at 555). Plaintiffs do not and cannot meet the applicable pleading standard for their claims because the reporting was substantially true, *see* Point IV.A, the fair report privilege protects Hearst from liability, *see* Point IV.B, and the Second Complaint does not otherwise allege facts sufficient to plausibly state a defamation claim, *see* Point IV.C, or a false light claim, *see* Point IV.D.

A.     **Plaintiffs Cannot Meet Their Burden of Proving Falsity Since the News Report is Substantially True**

Plaintiffs' claims fail as a matter of law because the report at issue is "substantially true," meaning that Plaintiffs cannot meet their burden of pleading falsity. Because Hearst is a media defendant and the speech at issue involves matters of public concern,[4] Plaintiffs carry a common law and constitutional burden of pleading and proving falsity. *Phila. Newspapers, Inc. v. Hepps*, 475 U.S. 767, 776 (1986). "The common law of libel . . . . overlooks minor inaccuracies and concentrates upon substantial truth." *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 516 (1991) (citations omitted); *Stones Rover Motors, Inc. v. Mid-South Publ'g Co.*, 651 S.W.2d 713, 719-20 (Tenn. Ct. App. 1983), *abrogated on other grounds recognized in Zius v. Shelton*, No. E1999-01157-COA-R9-CV, 2000 WL 739466, at *3 (Tenn. Ct. App. June 6, 2000). Similarly, "Tennessee law recognizes that false light like defamation involves the publication of false information." *Gallagher v. E.W. Scripps Co.*, No. 08-2153, 2009 WL 1505649, at *7 (W.D. Tenn. May 28, 2009) (citing *West v. Media Gen. Convergence, Inc.*, 53 S.W.3d 640, 645 n.5 (Tenn. 2001)). Statements that are substantially true, therefore, are not actionable unless they

---

[4] "Speech deals with matters of public concern when it can be fairly considered as relating to any matter of political, social, or other concern to the community or when it is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public." *Snyder v. Phelps*, 562 U.S. 443, 453 (2011) (citations and quotation marks omitted). The determination of whether a matter is of public concern is a question of law for the court. *Id*.

somehow made discrete presentations of information in a fashion casting plaintiff in a false light. *Id.* at \*7, 9-10 (dismissing false light claims where reports of court proceedings substantially true).

"Minor inaccuracies do not amount to falsity so long as the substance, the gist, the sting, of the libelous charge be justified.  Put another way, the statement is not considered false unless it would have a different effect on the mind of the reader from that which the pleaded truth would have produced."  *Masson*, 501 U.S. at 517 (citations and quotation marks omitted).  To assess falsity, the web article and broadcast must be considered in their entirety, viewing the overall meaning of the statements in context.  *Clark v. Viacom Int'l Inc.*, 617 F. App'x 495, 508 (6th Cir. 2015).

Plaintiffs' Second Complaint adds in cursory fashion that the use of the word "poaching" as part of KCCI's reporting of their guilty pleas was false because they only pleaded guilty to conspiring to violate the Lacey Act.  SAC ¶ 5.  Reading the entirety of the reporting and statements in context, alongside the judicial records of the federal charges and guilty pleas, there can be no doubt that the reporting is substantially true.  Exs. 1–6; Ex. 8 at Exs. A, B.  The news reports accurately stated that Plaintiffs were charged in a federal poaching case along with HHO, that prosecutors said the couple documented a series of hunts where HHO used illegal bait traps to attract game, and that the Bowmars pleaded guilty to the misdemeanor conspiracy charge. *Compare* Ex. 8 at Exs. A, B, *with* Ex. 1 ¶¶ 1–27; Exs 2, 3, 4 at 2–4.; Ex. 7.  The common usage of "poach" in dictionary definitions is consistent, referring to the illegal taking of game or fish. *See Poach*, https://www.merriam-webster.com/dictionary/poach (last visited July 19, 2023).[5]

---

[5] *See also Poach*, https://www.oed.com/search/dictionary/?scope=Entries&q=poach (last visited July 21, 2023); *Poach*, https://www.dictionary.com/browse/poach (last visited July 21, 2023).

This common understanding is entirely consistent with the Bowmars' charges and pleas, which

contain repeated references to wildlife being hunted in violation of Nebraska laws. Ex. 1 ¶¶ 1–

27; Exs 2, 3, 4 at 2–4; Ex. 7. Indeed, courts describing the Lacey Act use the term. *See, e.g.*,

*United States v. Butler*, 694 F.3d 1177, 1178-79 (10th Cir. 2012). The Lacey Act is a federal law

criminalizing poaching. There is simply nothing untrue, much less substantially so, in Hearst's

reporting when viewing it in full, and therefore no defamation or false light. *See Archibald v.*

*Metro. Gov't of Nashville & Davidson Cnty.*, No. 11-0728, 2012 WL 3000137, at *3-4 (M.D.

Tenn. July 23, 2012) (taking judicial notice of criminal proceedings and news reports, dismissing

defamation claim because reports were substantially true), *report and recommendation adopted*,

2012 WL 3283480 (M.D. Tenn. Aug. 10, 2012); *Wooden v. Seigenthaler*, No. 86-1461986, 1986

WL 11279, at *1-2 (Tenn. Ct. App. Oct. 8, 1986); *Gallagher*, 2009 WL 1505649, at *7, 9-10;

*O'Keefe v. WDC Media, LLC*, No. 13-6530, 2015 WL 1472410, at *4-5 (D.N.J. Mar. 30, 2015)

(collecting cases).

> **B.      The News Report is Privileged as a Fair and Accurate Report of Plaintiffs'**
> **Criminal Proceedings**

Nothing in the Second Complaint changes the inevitable conclusion that Plaintiffs'

claims are not actionable as a matter of law for the independent reason that the publication at

issue s a fair and accurate report of official proceedings.

"The Tennessee fair report privilege is a well-established Tennessee common law

doctrine that protects media entities that report on official actions and proceedings." *Molthan*,

2018 WL 691338, at *11 (citing *Milligan v. United States*, 670 F.3d 686, 696 (6th Cir. 2012));

*Funk v. Scripps Media, Inc.*, 570 S.W.3d 205, 211-212 (Tenn. 2019). Its application is a

question of law for the court. *Hill v. Old Navy, LLC*, 20 F. Supp. 3d 643, 648 (W.D. Tenn.

2014). Reporting based on court documents from judicial proceedings is protected by the

privilege from claims for defamation and false light.  *Molthan*, 2018 WL 691338, at *12

(dismissing libel claim where defendant's broadcast accurately reported contents of judicial and

legislative testimony); *Smith v. Reed*, 944 S.W.2d 623, 625 (Tenn. Ct. App. 1996); *West*, 53

S.W.3d at 645-48 (the absolute and conditional privileges established by Sections 652F-G of the

Restatement (Second) of Torts, which apply to defamation, also apply to false light invasion of

privacy); *Hill*, 20 F. Supp. 3d at 646 (fair report privilege protected defendant's news report from

false light claim (and other torts)).  And, recently, the Tennessee Supreme Court adopted the

modern approach of the privilege set forth in the Restatement (Second) of Torts § 611 and held

that the privilege cannot be overcome by a showing of actual malice.  *Funk*, 570 S.W.2d at 211-

12.

In order for the privilege to apply, the news report must be a fair and accurate portrayal of

the official action, or a fair abridgement of the occurrence reported.  *Id.*  The report, however,

does not have to be "a verbatim, technically accurate account in every detail, as long as it

conveys a correct and just impression of what took place."  *Milligan*, 670 F.3d at 697 (citation

omitted).  "Minor, insignificant factual discrepancies will not overcome the fair report privilege .

. . ."  *Id.*  Moreover, on a motion to dismiss, the court may take judicial notice of and consider

the underlying judicial documents to determine whether the privilege applies.  *See Molthan*,

2018 WL 691338, at *12.

News reports of criminal charges and proceedings are routinely afforded protection from

liability based on the fair report privilege where the overall gist of the proceedings is fairly and

accurately conveyed.  *See, e.g.*, *id.*; *Milligan v. United States*, 644 F. Supp. 2d 1020 (M.D. Tenn.

2009), *aff'd*, 670 F.3d 686 (6th Cir. 2012); *Archibald*, 2012 WL 3000137, at *3-4; *Carnett v.*

*WBBJ-TV*, No. 14-01309, 2015 WL 10714007, at *4 (W.D. Tenn. Sept. 8, 2015), *report and recommendation adopted in relevant part*, 2015 WL 10714008 (W.D. Tenn. Sept. 25, 2015).

The news reports here are fair and accurate accounts and "convey a just impression" of Plaintiffs' District of Nebraska criminal charges and conspiracy guilty pleas concerning their agreement to "purchase hunting and guiding services from HHO for the purposes of taking, possessing, and acquiring wildlife, some of which was attempted to be taken in violation of the laws and regulations of the State of Nebraska," (Exs. 2, 3, 4 at 3) and "record[ing], produc[ing], and publish[ing] photographs, videos and other media content related to HHO hunts … upon various internet or social media platforms" (*id.*). *See also* Exs. 1–4. Plaintiffs' effort to zero in on a single word within the entire report, a word that was both accurate factually and consistent with the criminal charges to which the Bowmars pled guilty, does not defeat the privilege. The Second Complaint should not be permitted.

### C.      Plaintiffs Have Not Plausibly Alleged a Claim for Defamation

Plaintiffs have not added sufficient facts to plausibly state a claim for defamation. *See, e.g.*, *Molthan*, 2018 WL 691338, at *12 (dismissing libel claim where allegations as to elements were conclusory). Under Tennessee law, to plausibly state a claim for defamation, a plaintiff must allege, that (1) a party published a statement; (2) with knowledge that the statement is false and defaming to the other; or (3) with reckless disregard for the truth of the statement or with negligence in failing to ascertain the truth of the statement. *Sullivan v. Baptist Mem'l Hosp.*, 995 S.W.2d 569, 571 (Tenn. 1999) (citing Restatement (Second) of Torts § 580 B (1977); *Press v. Verran*, 569 S.W.2d 435, 442 (Tenn. 1978)). Further, to survive dismissal, a plaintiff must plead actual injury to reputation resulting from the defamatory publication. *See Kersey v. Wilson*, No. M2005-02106-COA-R3-CV, 2006 WL 3952899, at *6 (Tenn. Ct. App. Dec. 29, 2006), *appeal denied* (Tenn. 2007), *cert. denied*, 552 U.S. 889 (2007).

The Second Complaint focuses on the word poaching but does not contain factual content identifying what is false about the use of the word within the context of the full piece, especially given the definition of poaching and Plaintiffs' charges and guilty pleas. *See supra*, Points IV.A, B; SAC ¶¶ 5, 6 7, 9. Thus, they do not sufficiently allege falsity. *See, e.g.*, *Mothan*, 2018 WL 691338, at *1, 12 (dismissing libel claim where allegations that criminal record was falsely reported were conclusory); *Setzer v. First Choice Lending Servs., LLC*, No. 17-CV-00147, 2018 WL 735194, at *10-11 (E.D. Tenn. Feb. 6, 2018), *aff'd*, No. 18-5192, 2018 WL 7500477 (6th Cir. Sept. 10, 2018). Nor is falsity plausibly alleged by the mere failure to mention that certain charges were dropped. SAC ¶ 7; *see Bright v. Monroe Cnty. Sheriff's Dep't*, No. 05-cv-264, 2008 WL 2401262, at *4-5 (E.D. Tenn. June 11, 2008).

Plaintiffs deemed public figures also must establish that the libelous statements were made with "actual malice—that is, with knowledge that it was false or with reckless disregard of whether it was false or not." *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 279-80 (1964); *Press*, 569 S.W.2d at 441. Plaintiffs' allegations regarding their activities and fame show that they are public figures, (SAC ¶¶ 1, 6, 8, 11, 13 (reciting standard); *see also, e.g.*, Ex. 1 ¶¶ 2, 19, 22, 24, 27; Ex. 8 at Ex. B). However, the mere recitation that statements were made with actual malice does not suffice. *See Molthan*, 2018 WL 691338, at *12 (dismissing defamation claims where allegations were conclusory and underlying judicial records confirmed impossibility of actual malice). The knowledge that additional charges were dropped and Hearst's motivation for profit are irrelevant. SAC ¶ 7; *see, e.g.*, *Cobb v. Time*, 278 F.3d 629, 636-37 (6th Cir. 2002), *cert. denied*, 537 U.S. 878 (2002); *Bright*, 2008 WL 2401262, at *4-5.

Plaintiffs' defamation claim also fails because they have failed adequately to allege facts showing damage to their reputations arising from the news story. *See Byrd v. State*, 150 S.W.3d

414, 421-22 (Tenn. Ct. App. 2004). Here, Plaintiffs list the types of harm they allegedly suffered but do not sufficiently allege that the damages resulted from the alleged defamatory statements, rather than the fact that they pled guilty (and were subsequently convicted) to conspiring to violate a law that condemns illegal hunting. SAC ¶¶ 9, 15; *see also* Ex. 7; *see Kersey*, 2006 WL 3952899, at *6 (affirming dismissal where pleading contained general allegation of damages without accompanying allegation of fact that would lead court to attribute loss to the statement made rather than the behavior being commented on).

### D. Plaintiffs Have Not Plausibly Alleged a Claim for False Light Invasion of Privacy

Plaintiffs' separate, but related, false light continues to suffer from the same pleading defects as their defamation claim. The elements of a false light claim under Tennessee law are as follows: (1) publicity, (2) that places plaintiff in a false light, (3) that is "highly offensive to a reasonable person", and (4) that the defendant knew of or acted with reckless disregard to the "falsity of the publicized matter and the false light in which the other would be placed." *West*, 53 S.W.3d at 643-44 (citing Restatement (Second) of Torts § 652E (1977)). Recognizing the potential for overlap with and end-runs around defamation's constitutional limits,[6] the Tennessee Supreme Court imposed stringent limitations on the false light claim, including constitutional limits. *See id.* at 645-48 (actual malice applies where matter of publicity is of public interest; separate damages must be alleged and proven). If Plaintiffs seek to recover under both theories, they must also specifically plead (and prove) actual damages allegedly suffered from the invasion of their privacy. *See id.* at 648. Those damages include emotional distress, and injury

---

[6] *See, e.g.*, Restatement (Second) of Torts, § 652E, cmt. e ("When the false publicity is also defamatory so that either action can be maintained by the plaintiff, it is arguable that limitations of long standing that have been found desirable for the action for defamation should not be successfully evaded by proceeding upon a different theory of later origin . . . .").

to the inner person, but not injury to reputation, which is reserved for defamation.  *See id*. at 645-46, 648.

Plaintiffs' amended false light claim reinforces that it is entirely duplicative of their defamation claim and thus would not survive dismissal, in that both seek damages for injury to reputation, and reputational injury is not recoverable via a false light claim.  SAC ¶¶ 9, 11, 14–15 (damage to reputations); *see West*, 53 S.W.3d at 645-46, 48.

Plaintiffs attempt to save their false light claim now by stating that the use of the word "poaching" has a special meaning within the hunting community, without saying what that meaning is.  SAC ¶ 11.  As demonstrated above, there is nothing misleading here.  *Supra*, Points IV.A, B.  And, this conclusory allegation is insufficient.  *See, e.g.*, *Molthan*, 2018 WL 691338, at *12 (conclusory allegations did not sufficiently plead that defendants misleadingly placed plaintiff in a false light that would be highly offensive to a reasonable person); *Davis v. Covenant Presbyterian Church*, No. M2013-02273-COA-R3CV, 2014 WL 2895898, at *4-5 (Tenn. Ct. App. June 23, 2014).  Similarly, while recognizing that actual malice applies (SAC ¶¶ 6, 8), Plaintiffs do not sufficiently allege any facts to support fault.  *See Hall v. Metro. Gov't of Nashville & Davidson Cnty.*, No. 17-cv-01268, 2018 WL 305751, at *2, 7 (M.D. Tenn. Jan. 5, 2018) (dismissing false light claim for failure to adequately plead actual malice).

## CONCLUSION

For the foregoing reasons, Hearst respectfully requests this Court deny Plaintiffs' motion to amend because the Second Complaint, like its predecessor, cannot withstand dismissal under Rules 12(b)(2), (3) and (6).

DATED:  July 21, 2023

By     */s/ Kristen L. Hauser*

Jonathan R. Donnellan (pro hac vice)
Kristen L. Hauser (pro hac vice)
HEARST CORPORATION
Office of General Counsel
300 W. 57th Street, 40th Floor
New York, NY 10019
(212) 649-2020
jdonnellan@hearst.com
khauser@hearst.com

AND

Rocklan W. King III (BPR No. 30643)
Adams and Reese LLP
1600 West End Avenue, Suite 1400
Nashville, Tennessee 37203
Tel: (615) 259-1041
Fax: (615) 259-1470
Rocky.king@arlaw.com

Lucian T. Pera (BPR No. 11641)
Adams and Reese LLP
6075 Poplar Avenue, Suite 700
Memphis, TN 38119
Tel: (901) 524-5278
Fax: (901) 524-5378
Lucian.Pera@arlaw.com

*Attorneys for Defendant Hearst Properties Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that, on July 21, 2023, a true and correct copy of the foregoing

Memorandum of Law in Opposition to Plaintiffs' Motion to Amend was filed with the Court and

served via CM/ECF system upon the following counsel of record for Plaintiffs:

Belle Meade Office Park
G. Kline Preston, IV, Esq.
4515 Harding Pike, Suite 107
Nashville, TN 37205
Fax: (866) 610-9565
kpreston@klineprestonlaw.com

By    */s/ Kristen L. Hauser*