IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | | |
|---|---|---|
| JOSH BOWMAR and SARAH BOWMAR, | ) | Case No. 4:23-cv-00359-SMR-SBJ |
| | ) | |
| Plaintiffs, | ) | |
| | ) | **ORDER ON DEFENDANT'S MOTION** |
| v. | ) | **TO DISMISS** |
| | ) | |
| HEARST PROPERTIES, INC., | ) | |
| | ) | |
| Defendant. | ) | |

Plaintiffs Josh Bowmar and Sarah Bowmar are entrepreneurs who have gained a substantial online following as hunting and fitness professionals. They regularly post videos and photos of their activities on multiple social media platforms including big game hunts. In 2020, they were indicted as part of a sprawling investigation into allegations of interstate poaching by a hunting and guiding company in Nebraska. The Bowmars eventually pled guilty to participating in a criminal poaching conspiracy.

Defendant Hearst Properties, Inc. ("Hearst") reported on the Bowmars' guilty plea in a television broadcast and a website article through its Des Moines-based outlet KCCI. The Bowmars allege that the KCCI report of their guilty plea was "malicious, disgraceful, and vilifying" because it described the proceedings as a "poaching" case and did not include details which they contend mitigates their culpability in federal poaching crimes. They argue that Hearst defamed them by failing to expressly inform its audience that the Bowmars admitted in their plea agreement that they should have known they were conspiring with criminal poachers—not that they were intentional poachers themselves. As discussed below, their position is inconsistent with defamation law and the First Amendment.

1

## I.      BACKGROUND

### A.  Factual Background[1]

The Bowmars post videos of their hunting and fitness activities on social media and YouTube platforms through their video production company, Bowmar Bowhunting, LLC ("BBH").  The Bowmars and BBH were indicted under the Lacey Act in the United States District Court for the District of Nebraska in 2020.  The indictment alleged that the couple and BBH violated, and conspired to violate, the Act over a multi-year period.  The Bowmars pled guilty to Count I of the five-count indictment, admitting that they conspired to violate the Lacey Act and the Government dismissed the remaining four counts as part of a plea agreement.  They were sentenced to three years' probation.

KCCI published a news story on the Bowmars' guilty plea in a television broadcast on October 31, 2022 and a website article on November 1, 2022.  The television broadcast displayed an on-screen graphic with the following information:

---

[1] The factual background is drawn from the Third Amended Complaint (TAC) and documents incorporated by the pleadings, including the documents in the criminal prosecution and the publications at issue.  *Miller v. Redwood Toxicology Lab., Inc.*, 688 F.3d 928, 931 n.3 (8th Cir. 2012) (noting that on a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court may consider "matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned.") (citation omitted).



The online news article contained the headline: "Ankeny couple pleads guilty in federal poaching case." [ECF No. 51-8 at 6]. The article is 108 words long:

> An Ankeny couple famous for their viral bow-hunting videos is pleading guilty in a federal poaching case. Josh and Sarah Bowmar are among dozens of people charged in a case against the Nebraska-based company Hidden Hills Outfitters. The Bowmars have more than one million followers on Instagram and 288,000 subscribers on YouTube. Prosecutors say the couple documented a series of guided hunts in which Hidden Hills and its owner used illegal bait traps to attract white-tailed deer. The Bowmars have pleaded guilty to a misdemeanor conspiracy charge. But they could face a maximum of $200,000 in fines at their sentencing. Court records show that is scheduled for January.

*Id.* at 6–7. There is no allegation that KCCI, or any other Hearst-owned media outlet, published any other statements on the Bowmars' criminal convictions.

### B.   Procedure Background

The Bowmars initiated this case in state court in Williamson County, Tennessee. [ECF No. 1-1 at 5–14]. Hearst removed the case on the basis of diversity jurisdiction to the United States District Court for the Middle District of Tennessee. [ECF No. 1]. After Hearst filed a motion to

dismiss for lack of personal jurisdiction and improper venue, the parties stipulated to a transfer of the case to this District.  [ECF Nos. 29, 31].

The Bowmars filed a Third Amended Complaint (TAC) at the direction of the Court after transfer, asserting a cause of action for defamation and false light invasion of privacy.  [ECF No. 48].  The TAC identifies a single defamatory statement, which was the headline of an online article published by Hearst: "Ankeny Couple Pleads Guilty in Federal Poaching Case."  *Id*. ¶ 7.  This statement, according to the Bowmars, was "malicious, disgraceful, and vilifying."  They claim that the company published this statement knowing it was false in order to "attract viewers" and "with a profit motive in order to sell its airtime."  *Id*. ¶¶ 7–8.  The TAC contends that there was "no factual and legal basis to claim that the Bowmars pled guilty in a poaching case because they had not."  *Id*. ¶ 8.  The Bowmars allege that they suffered significant financial and reputational damages as a result of this publication by Hearst, including being "attacked on the internet and lied about by the public . . . [t]hey have lost money, productive time, and experienced anxiety and humiliation as a direct result of the false defamatory statements.  They have also lost potential employees and business opportunities as a direct and proximate result" of the KCCI report.  *Id*. ¶ 9.

Hearst renews its Motion to Dismiss asserting that the TAC fails to state a claim because the allegations of falsity are not plausible because the KCCI report was true or at least substantially true.  Furthermore, the company argues that the report is privileged as a fair and accurate report of the criminal charges.  Hearst also claims that the TAC does not properly plead actual malice.  And finally, it argues that the alleged damages do not support a false light claim.  [ECF No. 51].

The Bowmars resist the Motion to Dismiss.  They claim that Hearst's statements—and the headline in particular—knowingly or recklessly "ignores and obscures the context and reality of

the case against the Bowmars and their guilty pleas." [ECF No. 54 at 1]. They reiterate that they have been attacked on the internet and lied about by the public. This has led to damages in the form of lost money, productivity, humiliation, and anxiety. The Bowmars argue that the KCCI report was neither true nor substantially true, it is not privileged, and they have properly pled actual malice and damages to support a false light invasion of privacy claim.

## II.   DISCUSSION

### A.  *Legal Standard*

#### 1.  Federal Rule of Civil Procedure 12(b)(6)

To survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A court must accept as true all facts pled and grant all reasonable inferences drawn from the pleadings in favor of the nonmovant. *Silva v. Metro. Life Ins. Co.*, 762 F.3d 711, 721 (8th Cir. 2014) (citation omitted). A complaint is not adequately pled if it contains "'naked assertions devoid of further factual enhancement.'" *Christopher v. Bushner*, 33 F.4th 495, 499 (8th Cir. 2022) (quoting *Iqbal*, 556 U.S. at 678).

Under the Rule 8 standard, a plaintiff is only required to set forth a "short and plain statement of the claim" with sufficient facts to "show that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). To state a claim under Rule 12(b)(6), the alleged facts "must be enough to raise a right to relief above the speculative level" by presenting claims that are facially plausible. *Iqbal*, 556 U.S. at 678 (citation omitted). The plausibility standard is not a probability requirement, but requires that the pleading contain sufficient facts "to raise a reasonable expectation that discovery

will reveal evidence" to support a violation.  *McDonough v. Anoka Cnty.*, 799 F.3d 931, 945 (8th Cir. 2015) (quoting *Twombly*, 550 U.S. at 570).

A plaintiff cannot predicate entitlement to relief on factual pleadings that merely advance "labels and conclusions." *Twombly*, 550 U.S. at 555. Accordingly, where a complaint pleads facts that are "consistent with" liability of a defendant, but does not cross the line between possibility and plausibility, it fails to state a claim under Rule 12(b)(6). *Id*. at 557. Furthermore, when the factual allegations "could not raise a claim of entitlement to relief" regardless of their veracity, a complaint "must be dismissed." *Id*. at 570.

### 2.   Defamation

Defamation is "an invasion of the interest in reputation and good name" comprising the "twin torts of libel and slander—the former being written and the latter being oral." *Johnson v. Nickerson*, 542 N.W.2d 506, 510 (Iowa 1996) (citation omitted). Libel (written defamation) and slander (oral defamation) require the same elements to state a claim. *Bauer v. Brinkman*, 958 N.W.2d 194, 198 (Iowa 2021). To establish a *prima facie* case for defamation, "the plaintiff must show the defendant (1) published a statement that (2) was defamatory (3) of and concerning the plaintiff, and (4) resulted in injury to the plaintiff." *Bertrand v. Mullin*, 846 N.W.2d 884, 892 (Iowa 2014) (citation omitted).

The United States Supreme Court has long recognized a heightened standard for a public figure to bring a successful defamation claim on an issue of public concern. *New York Times Co. v. Sullivan*, 376 U.S. 254, 279 (1964). A public figure cannot recover damages for a defamatory falsehood in the absence of "clear and convincing proof" that the false statement was made with knowledge that the statement "was false or with reckless disregard of whether it was false or not."

*Harte-Hanks Comm'cns, Inc. v. Connaughton*, 491 U.S. 657, 659 (1989) (quoting *Sullivan*, 376 U.S. at 279–80).

### 3.   False Light Invasion of Privacy

The Iowa Supreme Court has defined a claim for false light invasion of privacy as "based upon an untruthful publication which places a person before the public in a manner that would be highly offensive to a reasonable person." *Willson v. City of Des Moines*, 386 N.W.2d 76, 83 n.8 (Iowa 1986).  A claim for false light invasion of privacy under Iowa law requires a plaintiff to establish: (1) the defendant gave publicity to a matter concerning the plaintiff that placed the plaintiff before the public in a false light; (2) the false light that the plaintiff was placed in would be highly offensive to a reasonable person; and (3) the defendant had knowledge or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the plaintiff was placed. *Mills v. Iowa*, 924 F. Supp. 2d 1016, 1035 (S.D. Iowa 2013).  The untruthfulness element of a false light claim distinguishes it from other claims for invasion of privacy and often "affords an alternate remedy for defamation even though it is not necessary for a plaintiff to prove that he or she was defamed." *Anderson v. Low Rent Hous. Comm'n of Muscatine*, 304 N.W.2d 239, 248 (Iowa 1981) (citing Restatement (Second) of Torts § 652A (1977)).

### 4.   Defamation Versus False Light Invasion of Privacy

The TAC brings a claim for defamation and a claim for false light invasion of privacy, but a plaintiff may not recover under both theories for the same alleged falsehood. *Reeder v. Carroll*, 759 F. Supp. 2d 1064, 1079 (N.D. Iowa 2010) (citation omitted); *Berry v. Nat'l Broad. Co., Inc.*, 480 F.2d 428, 431 (8th Cir. 1973) (noting that a plaintiff may bring an action under either theory but "will be limited to only one recovery").  The primary distinction between the two causes of action is that a defamation claim allows recovery for damages to a plaintiff's reputation whereas a

false light invasion of privacy claim permits damages for emotional harm. *Kiesau v. Bantz*, 686 N.W.2d 164, 179 (Iowa 2004). The First Amendment applies to a false light invasion of privacy claim with the same force as it applies to a defamation claim. *Jones v. Palmer Commc'ns, Inc.*, 440 N.W.2d 884, 894 (Iowa 1989) (observing that it would be "unreasonable to allow a party to evade the standards surrounding defamation law" by pleading an alternative theory).

### B. Analysis

#### 1. Falsity

Defamation is publication of demonstrably false statements of fact that tend to harm a person's reputation. *Huegerich v. IBP, Inc.*, 547 N.W.2d 216, 221 (Iowa 1996) (citation omitted). Truth is an absolute defense to a claim for defamation. *Id.* Furthermore, if the statements cannot be reasonably construed as communicating facts about a person, they are not actionable as defamation. *Milkovich v. Lorain J. Co.*, 497 U.S. 1, 20 (1990). Whether a statement is susceptible to a defamatory meaning is a question of law. *Jones*, 440 N.W.2d at 891. When conducting this analysis, courts must assess four factors. *Bandstra v. Covenant Reformed Church*, 913 N.W.2d 19, 47 (Iowa 2018).

The first consideration is whether the statement has a "precise" meaning which is widely understood or whether the meaning is "indefinite and ambiguous." *Id.* (quoting *Yates v. Iowa W. Racing Ass'n*, 721 N.W.2d 762, 770 (Iowa 2006)). A court will next examine the extent to which the challenged statement is "objectively capable of proof or disproof." *Id.* "[T]he context in which the alleged defamatory statement occurs" is another factor. *Id.* Finally, courts should assess "the broader social context" in which the alleged defamatory statement was published. *Id.*

Hearst argues that the Bowmars cannot meet their burden to show falsity because the KCCI report was true, or at a minimum, "substantially true." *Yates*, 721 N.W.2d at 769–70 (holding that

minor "inaccuracies of expression are immaterial provided the defamatory charge is true in substance") (citation omitted). At the pleading stage, the Bowmars have the burden to allege sufficient facts to show that the challenged statement is not substantially true. *Tannerite Sports, LLC v. NBC Universal Grp., LLC*, 864 F.3d 236, 247–48 (2d Cir. 2017).

Although a claim for false light invasion of privacy does not require proof of defamation, it still requires proof that the statements were untrue, and the falsity was material. *Winegard v. Larsen*, 260 N.W.2d 816, 823 (Iowa 1977) (rejecting a false light invasion of privacy claim where "minor variations" between the facts and the public statements could not "materially affect" the public's view of the matter).

The Bowmars allege that the headline of the online article, "Ankeny Couple Pleads Guilty in Federal Poaching Case," was false. The reason it was false, as alleged in the TAC, is because they did not plead guilty to a federal poaching charge—they pled guilty to *conspiring* to violate the Lacey Act. They insist that the plea agreements did not admit to any overt acts in furtherance of the conspiracy. The Lacey Act:

> makes it unlawful for a person to, among other things, knowingly transport, sell, receive, acquire or purchase wildlife, in interstate commerce, which has been taken, possessed, transported, or sold in violation of a wildlife-related state or federal law, and which the person knows, or in the exercise of due care should know, was taken, possessed, transported, or sold in violation of a state or federal law or regulation related to wildlife protection.

16 U.S.C. § 3372(a)(1), (2). The Bowmars entered a guilty plea to Count I of the indictment which charged them with:

> willfully and knowingly conspired, combined, confederated and agreed together and with each other, and with others known to the Grand Jury, to . . . knowingly transport, and attempt to transport, receive, and acquire wildlife, that is, turkey and deer, or parts thereof, in interstate commerce, when in the exercise of due care, the defendant should have known that said wildlife was taken,

-9-

> possessed, and transported in violation of and in a manner under the
> regulations of Nebraska, . . . all in violation of [the Lacey Act].

[ECF No. 51-1 at 7]. The indictment laid out extensive details of overt acts in which the Bowmars allegedly engaged in furtherance of the conspiracy to violate the Lacey Act. This included purchasing "hunting and guiding services from HHO for the purposes of taking, possessing, and acquiring wildlife" in violation of Nebraska state law, "routinely and intentionally" hunting white-tailed deer within baited areas, and "knowingly and unlawfully" hunting deer in baited areas. *Id.* at 6–7. The grand jury also found probable cause that the Bowmars killed "wild turkey and deer in baited areas" without a permit, transported illegally taken wildlife through interstate commerce, and published video and other content depicting these unlawful hunts on the BBH YouTube channel and Instagram account. *Id.* at 9.

By pleading guilty, the Bowmars admitted there was a factual basis to enter a guilty plea—in other words, that they committed each element of the charged offense. This is the same constitutional requirement of *every* criminal defendant. Accordingly, they admitted that they joined an agreement or understanding to violate a federal law that criminalizes poaching in interstate commerce, when they should have known about the criminality of the agreement.

Nevertheless, the Bowmars assert that they were maliciously defamed because the plea agreement was "a carefully crafted deal" where the "overt acts charged in the information were *not* part of the plea." [ECF No. 54 at 2] (emphasis in original). The Bowmars urge that they did not admit in their guilty plea: (1) that they agreed to purchase hunting and guiding services from HHO for the purpose of engaging in poaching[2]; or (2) they knowingly or intentionally violated any Nebraska law related to baiting or hunting without a license. Rather, "[t]he crux of this plea deal

---

[2] One of the ordinary usages for "poach" is "to take game or fish illegally." *Poach*, https://www.merriam-webster.com/dictionary/poach (last visited May 25, 2024)

-10-

was that the Bowmars failed to vet their partners," meaning HHO.[3]  The Bowmars insist that they

"took responsibility for that oversight when they pleaded guilty to one count of conspiracy."  But

now, in their view, they were victimized by Hearst through the KCCI report which omitted "all

that context and nuance to leave a specific implication in the minds of its audience" because the

article portrays them as "knowing and intentional bad actors, rather than negligent hunters who

put their trust in the wrong outfitting company."  *Id*. at 3.

The Bowmars reject Hearst's argument regarding "substantial truth" by asserting that it

does not overcome defamation by implication.  Furthermore, they urge that the "gist or sting of

the defamatory charge" must be assessed by looking at the thrust of the publication rather than

immaterial details.  The Bowmars contend that the "gist or sting" of the KCCI report is that they

are poachers.  This characterization "exposes them to substantially more community opprobrium

than the truth, which is that they failed to vet the hunting outfitter that committed overt acts of

poaching.  Accepting responsibility for trusting a bad actor is not the same as committing overt

bad acts."  *Id*. at 5–6.

The TAC fails to plausibly allege falsity sufficient to state a claim for defamation.

Notwithstanding the Bowmars' dissatisfaction with the KCCI report, the Court finds as a matter

of law that it was true.  *Behr v. Meredith Corp.*, 414 N.W.2d 339, 342 (Iowa 1987) (holding that

if the underlying facts regarding the gist of the defamation charge are undisputed, a court may

determine whether it is substantially true as a matter of law).  The sole statement pled in the TAC

reads, "Ankeny Couple Pleads Guilty in Federal Poaching Case."  [ECF No. 48 ¶ 7].  There is

nothing in that statement that is false, nor do the Bowmars argue that anything in the statement is

untrue.  Rather, they simply object to KCCI failing to further explain "context and nuance" to

---

[3] The "failure to vet" language appears nowhere in the plea agreement.

avoid any misinterpretation by the audience.  First, there is no contention that "Ankeny Couple" is a false statement.  Second, it is in fact true that the Bowmars pled guilty in the case.  Finally, the guilty plea occurred in a federally-indicted poaching case.  Even taken in its totality, the sentence is true and there is nothing false or misleading about it.[4]

The Bowmars argue that the KCCI report "portrays" them as "knowing and intentional bad actors" when they were merely negligent hunters.  They claim that because the indictment alleged they had knowingly and intentionally committed overt poaching acts, by reporting that they had pled guilty without including the facts admitted in the plea agreement, the KCCI report "created the implication that the Bowmars were guilty of conduct alleged in the indictment rather than the guilty plea." [ECF No. 54 at 5].  Importantly, the KCCI report does not accuse the Bowmars of knowing and intentional poaching, there was no mention of their criminal intent.  Hearst also did not make any statements regarding the contents of the indictment, much less an implication that the Bowmars had admitted to the conduct alleged in it, even though the grand jury found probable cause that the Bowmars committed approximately 25 overt acts in furtherance of the criminal poaching conspiracy.[5]  The indictment provided significant detail about these alleged overt acts,

---

[4] In their resistance to the Motion to Dismiss, the Bowmars attempt to recast their claim for defamation as one for defamation by implication.  This is a separate cause of action.  *Stevens v. Iowa Newspapers, Inc*., 728 N.W.2d 823, 828 (Iowa 2007) (recognizing defamation by implication for the first time under Iowa law).  A plaintiff may not amend the complaint "by the briefs in opposition to a motion to dismiss." *Gallagher v. City of Clayton*, 699 F.3d 1013, 1022 (8th Cir. 2022) (citation omitted).  Nevertheless, the Court's analysis rejecting the defamation claim also applies to a defamation by implication claim because the challenged statements are not false as a matter of law.

[5] The grand jury found probable cause that, on more than one occasion, Josh Bowmar and Sarah Bowmar hunted deer and turkey within "baited" areas including from elevated and concealed positions in near proximity to the bait sites.  The bait sites were allegedly monitored by electronic game cameras which the Bowmars were able to view in real-time.  This purportedly facilitated the pursuit of specifically identified trophy-sized game.  Josh Bowmar was accused of

including dates, times, and specific locations.  Some of these conspiratorial acts were allegedly depicted on surveillance footage.  KCCI did not report on any of these unproven overt acts.

The Bowmars' theory of defamation is completely untenable and unsupported by the law. The defamation standard is "publication of false statements of fact."  *Bauer*, 958 N.W.2d at 198. It is not defamation to omit "context and nuance" which the subject of the publication wishes to be included.  *Janklow v. Newsweek, Inc.*, 759 F.2d 644, 648 (8th Cir. 1985) (noting that the First Amendment does not allow the government to "force a newspaper to print copy which, in its journalistic discretion, it chooses to leave on the newsroom floor") (citation omitted).

Hearst reported the underlying facts in the criminal proceeding fairly and accurately, it had no obligation to add "context and nuance" which would have portrayed the Bowmars more positively.  As established by their own admissions in the plea agreement: (1) HHO engaged in illegal hunting of wildlife; (2) the Bowmars purchased hunting and guiding services from HHO to illegally hunt wildlife; (3) the Bowmars and BBH recorded the wildlife while they were illegally hunted and posted these videos on their social media platforms; and (4) the Bowmars and BBH received $44,000 in proceeds from the illegal hunts.  Hearst had no legal obligation to state that the Bowmars "failed to exercise due care in ensuring that the outfitter they relied upon did not engage in poaching activities."  The government cannot compel the company to characterize their criminal convictions as the result of trusting the wrong company or require it to devote air time or journalistic resources to expound on the "context and nuance" of the Bowmars' specific criminal admissions.  *Janklow*, 759 F.2d at 648 ("While newspapers have long been liable for that which they publish, they have never been liable solely for that which was omitted.").

---

personally maintaining and refreshing certain bait sites on multiple occasions.  [ECF No. 51-1 at 9–18].  None of this information appeared in the KCCI report.

In summary, there were no falsehoods stated in the KCCI report.  There was no omission of critical details which unfairly characterized the Bowmars' criminal convictions in a defamatory manner.  Hearst has a constitutionally-protected right to report on criminal proceedings where public figures like the Bowmars admit to conspiring to violate federal poaching laws.  The law imposes no obligation on *any* speaker to advance a preferred narrative or emphasize certain facts.

## 2.   Actual Malice

In addition to the failure to plead falsity to state a claim for defamation, the TAC does not adequately plead actual malice.  This is an independent basis on which to dismiss the claim.  *See Campbell v. Citizens for an Honest Gov't, Inc.*, 255 F.3d 560, 569 (8th Cir. 2001) ("A public-figure plaintiff must do more than prove falsity to prevail in a defamation claim").

At the pleading stage, a claim for defamation brought by a public figure must plausibly allege facts demonstrating that the challenged statements were made with "actual malice."  The actual malice standard requires that an allegedly defamatory statement must be published with knowledge that it was false, or with a reckless disregard to whether it was false.  *Nelson Auto Ctr., Inc. v. Multimedia Holdings Corp.*, 951 F.3d 952, 956 (8th Cir. 2020) (citing *Sullivan*, 376 U.S. at 279–80); *Masson v. New Yorker Mag., Inc.*, 501 U.S. 496, 499 (1991) ("The First Amendment protects authors and journalists who write about public figures by requiring a plaintiff to prove that the defamatory statements were made" with actual malice).  The standard of actual malice under the First Amendment is not the same as the common law actual malice and it "has nothing to do with bad motive or ill will."  *Bertrand*, 846 N.W.2d at 898–99 (quoting *Harte-Hanks Comm'cns*, 491 U.S. at 666 n.7).

Although the actual malice standard under the First Amendment was first applied to public officials, the Supreme Court expanded its scope to "public figures" shortly after *Sullivan*.  *See*

*Curtis Publ'g Co. v. Butts*, 388 U.S. 130, 164 (1967) (explaining that persons who are "intimately involved in the resolution of important public questions or, by reason of their fame, shape events in areas of concern to society at large" are public figures for defamation purposes) (Warren, C.J., concurring). A public figure can be a limited-purpose public figure, "defined as one who 'voluntarily injects himself or is drawn into a particular public controversy and thereby becomes a public figure for a limited range of issues.'" *Stepnes v. Ritschel*, 663 F.3d 952, 963 (8th Cir. 2011) (quoting *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 351 (1974)).

The Bowmars do not dispute that they are public figures and therefore must satisfy the actual malice standard. At a minimum, they are appropriately designated as limited public figures. The Bowmars have over one million followers on Instagram and hundreds of thousands of subscribers on YouTube. [ECF No. 51-8 at 6–7]. The acts alleged in the indictment were documented and published to their audience via the same social media platforms.

A standard similar to actual malice applies to claims for false light invasion of privacy, regardless of whether a plaintiff is considered a public figure. *Winegard*, 260 N.W.2d at 823 (adopting the Restatement standard for false light which requires "the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter."). Actual malice must be demonstrated for a plaintiff to obtain punitive damages for defamatory statements involving a matter of public concern. *Jones*, 440 N.W.2d at 900 (citing *Bagley v. Iowa Beef Processors, Inc.*, 797 F.2d 632, 644 (8th Cir. 1986)).

Notwithstanding this heightened constitutional standard, the TAC pleads nothing more than conclusory allegations that the statements were made with actual malice. It is permissible for actual malice to "be alleged generally." Fed. R. Civ. P. 9(b). However, a plaintiff must still plead facts indicating that the defendant had serious doubts about the veracity of the statements. *Nunes*

*v. Lizza*, 486 F. Supp. 3d 1267, 1297 (N.D. Iowa 2020) ("Reckless disregard is not based on an objective standard."). The actual malice standard is a "daunting one." *Campbell*, 255 F.3d at 569 (quoting *McFarlane v. Esquire Mag.*, 74 F.3d 1296, 1308 (D.C. Cir. 1996)).

The Bowmars argue that Hearst published false statements about them with a profit motive to attract viewers and readers to its platforms. They argue that in the "exercise of reasonable care" the company could have determined that they did not plead guilty to overt acts of poaching, based on the differences between the indictment and their written guilty pleas. [ECF No. 54 at 7]. This is wholly inadequate to plead actual malice. Courts have repeatedly rejected the Bowmars' position that actual malice can be inferred by a media organization based on a profit motivation alone. *See Nelson Auto Ctr., Inc*, 951 F.3d at 958 ("Failure to recognize a mistake or ambiguity and its potential consequences is not evidence of a reckless disregard for the truth"); *Campbell*, 255 F.3d at 569 (holding that "the record must clearly and convincingly demonstrate either the defendant's knowledge of falsity or his reckless disregard for the truth or falsity of the allegations"); *Cobb v. Time, Inc.*, 278 F.3d 629, 636–37 (6th Cir. 2002) (rejecting a claim that "the defendant published the defamatory statement in order to increase profits" as sufficient to show actual malice).

The Bowmars' insistence that actual malice can be inferred by the alleged "vast difference" between the indictment and the admitted facts in the guilty plea is unpersuasive. Actual malice is not an objective standard and a plaintiff must plead specific facts that the defendant had serious doubts about the accuracy of the statements. *Barreca v. Nickolas*, 683 N.W.2d 111, 123 (Iowa 2004) (citation omitted). Accordingly, even if the Bowmars had sufficiently pled falsity, they make no showing that the statements were published with actual malice.

### III.    CONCLUSION

The TAC alleges that "there was no factual or legal basis to claim that the Bowmars had pled guilty in a poaching case because they had not."  [ECF No. 48 ¶ 8].  It was not "fair and accurate" to report that they had pled guilty because the KCCI report recklessly ignored and obscured the "context and reality" of their criminal convictions—in other words, it did not reflect the Bowmars' preferred, self-serving spin on their criminal convictions.  The Bowmars claim they have taken responsibility for their criminal actions but KCCI's report exposed them to increased "community opprobrium."  They argue that dismissing this case would "sweep" the harms they have suffered "under the rug."  For the reasons discussed above, the Court rejects these arguments.  Defendant's Motion to Dismiss is GRANTED.  [ECF No. 51].

IT IS SO ORDERED.

Dated this 3rd day of June, 2024.

_____
STEPHANIE M. ROSE, CHIEF JUDGE
UNITED STATES DISTRICT COURT